# National Commercial Bank *v.* Miller & Co.

*Ancillary Garnishment; Judgment Discharging Garnishee.*

1. *Garnishment; what demands may be reached by.*—A debt or demand, for which the owner can not maintain an action of debt or *indebitatus assumpsit* in his own name, can not be reached and condemned by garnishment at the suit of his creditors.

2. *Check on bank or debtor; not assignment of funds in hands of drawee.*—A check, drawn and delivered to the person to whose order it is payable, does not, without acceptance by the drawee, operate as an assignment of the sum in his hands for which it is given; it may revoked by the drawer, at any time before acceptance, and is revoked by his death; and there being no privity, express or implied, between the payee and the drawee, the former can maintain no action on it against the latter.

3. *Indorsement of check " for collection ", or " for deposit."*—When a bank receives from a customer a check on another bank, for the special purpose of collection, the title does not pass by the special indorsement for that purpose; nor does the receiving bank owe the amount, until the check is collected. But, where the customer has a deposit account with the bankers, on which he is accustomed to deposit checks payable to himself, which are entered on his pass-book, and to draw against such deposits; an indorsement of the words " *For deposit*," on a check so deposited, " is, in the absence of a different understanding, presumptive of more than a mere agency or authority to collect "—it is a request and direction to deposit the sum to the credit of the customer, and gives to the bankers authority, not only to collect, but to use the check in such manner as, in their judgment and discretion, having reference to the condition and necessities of their business, may make it most available to their protection; and they may have it certified by the bank on which it is drawn.

4. *Certifying bank check.*—A certified check has a distinctive character as a species of commercial paper, the certification constituting a new

[National Commercial Bank v. Miller & Co.]

contract between the holder and the certifying bank; the funds of the drawer are, in legal contemplation, withdrawn from his credit, and appropriated to the payment of the check, and the bank becomes the debtor of the holder as for money had and received.

5. *Same; what demands may be reached by garnishment.*—Where the defendant has a right of election, on account of a tort committed, either to sue for the tort, or, waiving the tort, to sue for money had and received, the relation of debtor and creditor does not exist, until he elects to sue for the money; and his creditors can not defeat his election, by garnishment against the wrong-doer. But this principle does not apply, where the garnishees, having received a check from the defendant, with authority to collect for deposit and use, have had the check certified by the bank on which it is drawn, before the service of the garnishment: being authorized to have it certified, and the relation of the parties being thereby changed, they are liable to the defendant for the amount of the check, as for money had and received, and that liability may be reached by garnishment.

6. *Summons of transferree, or adverse claimant.*—When the answer of a garnishee admits an indebtedness or liability which is subject to garnishment, but discloses the fact that the demand is claimed by a third person, the statute requires that the adverse claimant shall be notified to appear (Code, § 3302); and it is error to discharge the garnishee, although his answer is not contested.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WM. E. CLARKE.

The appellant in this case, the National Commercial Bank of Mobile, commenced suit by summons and complaint, on the 5th February, 1884, against Adolph Proskauer; and at the same time sued out an ancillary garnishment, which was served, on the same day, on Thos. P. Miller & Co., bankers, doing business in the city of Mobile, as the debtors of said Proskauer. The action was founded on several promissory notes, which were executed in the name of "A Proskauer & Co.", and which aggregated over $23,000; all of said notes being dated June 23d, 1883, and payable January 1st, 1884, with interest from different antecedent days, commencing March 4th, 1882. The defendant appeared, and pleaded; and issue being joined, a judgment was rendered for the plaintiff on the 5th June, 1884. The garnishees also appeared, and filed a written answer; and afterwards, on motion of plaintiffs, they were examined orally in court, in answer to questions propounded by the parties, the examination being taken down in writing. In the answers thus made, written and oral, they stated the following facts:

At the time of the service of the garnishment, at ten minutes past two o'clock P. M., February 5th, 1884, the sum of $330.60 was standing on the books of said garnishees to the credit of "A Proskauer & Co., agent of B. Newgass & Co., Liverpool, England;" but they did not know whether it belonged to A. Proskauer & Co., or to B. Newgass & Co., though said Proskauer notified them, after the service of the garnishment, that it belonged to said Newgass & Co. They also had in their

possession, at the time of the service of the garnishment, two checks which Proskauer had deposited with them that day, each of which was for $8,000, and was drawn by "*H. W. Leinkauf, pro Wm. H. Leinkauf,*" payable "*to the order of A. Proskauer & Co., agents.*" One of these checks was drawn on the Mobile Savings Bank, and the other on the People's Savings Bank; each was dated February 5th, 1884, and on each was an indorsement in these words: "*For deposit, Proskauer & Co., agents.*" Each of these checks was indorsed by the garnishees, "*Indorsements guaranteed,*" and presented to the bank on which it was drawn, for certification, before the service of the garnishment; and the check drawn on the People's Savings Bank was certified by that bank, by an indorsement in its name by its teller, in these words; "*Good for eight thousand dollars.*" Afterwards, on the same day—"after banking hours," as the written answer stated, "and after said checks are presented to said banks respectively for certification, and after the service of said garnishment"—written notices were served on the garnishees by said Leinkauf, the drawer of the checks, and by "*A. Proskauer & Co., agents,*" forbidding the collection of the checks. The notice served by Leinkauf was dated February 5th, 1884, addressed to the garnishees, and in these words; "You are hereby notified, that a check this day drawn by me on the People's Savings Bank, No. 3570, payable to A. Proskauer & Co., agents, and certified by said bank, was obtained from me upon certain conditions which have not been performed, and that the same now remains my property. I hereby forbid you to present said check for payment, or to collect or receive any money on the same; and I demand of you the delivery of said check to me." The notice served by "A Proskauer & Co., ag'ts," was also dated February 5th, 1884, addressed to the garnishees, and in these words: "The certified check of this date for $8,000, No. 3570, drawn by W. H. Leinkauf on the People's Savings Bank, payable to our order, having been indorsed to you for deposit only, we are advised that the legal title thereto has not passed from us, and that you have no authority to collect the same, except as our agent. We now hereby revoke your authority to collect said draft, and hereby instruct you not to present said draft for payment, and not to collect anything on account thereof."

As to the course of business between the garnishees and said A. Proskauer, and the manner in which their account with him was opened and kept on their books, there were material discrepancies between the written and the oral answers of the garnishees; but these discrepancies are only material to the question, which is not now presented, whether the checks be-

[National Commercial Bank v. Miller & Co.]

longed to Newgass & Co., or to Proskauer individually, who did business under the name of A. Proskauer & Co.

At the June term, 1884, after the garnishees had answered orally, they paid into court the amount admitted to be in their hands, $330.60, and asked to be discharged on their answer; and at the same term, the plaintiffs submitted a motion for a notice to B. Newgass & Co., and to Wm. H. Leinkauf, requiring each of them to appear and propound their respective interests in the moneys in the hands of the garnishees arising from the checks. These motions being submitted together, the court rendered judgment discharging the garnishees, ordering notice to B. Newgass & Co., as to the $330.60 in the hands of the garnishees, but refusing to order notice to them as to the check, and refusing to order notice to Leinkauf. The plaintiffs duly excepted to the judgment discharging the garnishees, and to the overruling and refusal of their motion for notices to Newgass & Co. and Leinkauf; and they now assign these rulings as error.

J. L. & G. L. SMITH, for appellant.—(1.) When the garnishees presented the check to the bank, and the bank certified it as good, the legal effect of the transaction was, that they collected the money for Proskauer, or Proskauer & Co., and re-deposited it with the bank to their own credit; that they thereby became indebted to Proskauer, or Proskauer & Co., for the amount of the check, as for money had and received; that the amount ceased to stand on the books of the bank to the credit of the drawer, but was charged against him; and that his liability as drawer of the check, and the liability of Proskauer & Co. as indorsers, was discharged.— *Willetts v. Phœnix Bank,* 2 Duer, 121; *Merchants' Bank v. State Bank,* 10 Wallace. 647; *Cooke v. National Bank,* 52 N. Y. 96; *Meads v. Merchants' Bank,* 25 N. Y. 148; *First Nat. Bank v. Leach,* 52 N. Y. 350; *Pratt v. Foote,* 9 N. Y. 468; *Bullard v. Randall,* 1 Gray, 607; *Girard Bank v. Penn Township,* 39 Penn. St. 92; 4 Duer, 219; 45 N. Y. 736; *Foster v. Bank of London,* 3 Foster & F. 214; *Smith v. Br. Bank,* 7 Ala. 880; Morse on Banks, 274, 310, 538, 2d ed.; 2 Dan. Neg. Instr. § 1601; Byles on Bills, by Sharswood, 39, 6th Amer. ed.; *Robson v. Bennett,* 2 Taunt. 388. (2.) The notices to the garnishees not to present or collect the check came too late after the service of the garnishment, which amounted to a sequestration of the fund in their hands, and no subsequent act or device of the parties can defeat the lien thereby acquired. Code, § 3280; *Dore v. Dawson,* 6 Ala. 712; *Warfield v. Campbell,* 38 Ala. 531; Morse on Banks, 304, 310, 320; Drake on Attachments, § 453, and cases cited; 1 Dan. Neg. Inst. § 493;

2 *Ib.* 1608. (3.) If the money, when attached, belonged to Proskauer, the plaintiffs were entitled to condemn it in the hands of the garnishees; and if Newgass & Co. had any interest in it, notice should have been issued to them as prayed, in order that their claim might be contested by plaintiffs.

R. H. CLARKE, and OVERALL & BESTOR, *contra.*—(1.) As to the $330.60 paid into court by the garnishees, there can be no doubt of their right to be discharged, without regard to the ownership of the money.—*Gas Light Co. v. Merrick & Sons,* 61 Ala. 534; *Henderson v. Gold Life Insurance Co.,* 72 Ala. 32. If, then, they are to be kept in court, it can only be on account of the two checks, which they still hold. But they received these checks "for deposit" only, and have never collected them. The title never passed to them, and their authority to present or collect has been revoked.—Morse on Banks, 385–6, 536, 2d ed.; 2 Danl. Neg. Inst. §§ 1590–91. (2.) The checks are mere *choses in action,* and are not the subject of garnishment. They are not "effects of the defendant," for which a money judgment may be rendered; nor are they "chattels," which they may be ordered to deliver up to the sheriff for sale.—*Jones v. Norris,* 3 Ala. 526; *Marston v. Carr,* 16 Ala. 328; *Pearce v. Shorter,* 50 Ala. 318; *Jones v. Crews,* 64 Ala. 368; *Toomer v. Randolph,* 60 Ala. 356; *Henderson v. Gold Life Insurance Co.,* 72 Ala. 32; *Knight v. Bowley,* 117 Mass. 551; Drake on Attachments, 481; *Ib.,* App. 665–8, 676–7, 681–3; *Mann v. Buford,* 3 Ala. 312; *Randolph v. Little,* 62 Ala. 396.

CLOPTON, J.—There being no contention as to the check on the Mobile Savings Bank, our consideration will be confined to the relation between the garnishees and the defendant, arising from the facts in respect to the check on the People's Savings Bank, which was certified by the bank. It is conceded, that by process of garnishment, which is a proceeding of statutory creation, no debt or demand can be condemned to the plaintiff's claim, for the recovery of which the defendant can not maintain, in his own name, an action of debt, or *indebitatus assumpsit.* The question decisive of the case is, was the amount of the check, at the time of the service of the garnishment, a legal demand due by the garnishees to the defendant, which he could enforce in his own name in an action at law?

2. The check, although drawn and delivered to the payee, payable to his order, did not operate, without acceptance by the drawee, as an assignment of the sum for which it was given, though the drawer may have had funds in the possession of the drawee, of an equal or larger amount. There being no privity,

express or implied, the holder of a check, in its original form, can bring no suit on the check against the drawee; even if it be conceded that he may maintain an action for any *special* injury, by reason of the omission of the drawee to perform a legal duty. In case of non-payment, the recourse of the holder is against the drawer, and the indorser, if any. The drawer alone can bring suit to recover the funds against which the check was drawn; and, ordinarily, he only can maintain an action for a failure to pay on presentment. He may revoke the check, and countermand its payment before acceptance; and if unaccepted, his death operates a revocation.

3. The reception from customers of checks on other banks is of frequent and daily occurrence in the business of banking, practiced because of its convenience. In such case, an indorsement of the check, for the special purpose of collection, is not an indorsement *animo indorsandi*, and does not pass the title of the payee. In the absence of a special agreement, when a check is deposited, it is taken, generally, for collection, by the bank as the agent of the depositor, and the bank does not owe the amount, until its collection is accomplished. It may be, that if it is passed to the credit of the depositor, and mingled with the general funds of the bank, it is, *prima facie*, a payment on deposit; but the bank may permit, as matter of favor and convenience, checks to be drawn against it before payment; the depositor, in the event of non-payment, being responsible for the sums drawn,—not by reason of his indorsement, the check not having ceased to be his property, but for money paid. If, therefore, the check had been deposited with the garnishees, for collection, and for no other special purpose, it is manifest that, so long as it remained uncollected, and in its original form, the amount could not be condemned by process of garnishment.

In what respects, and to what extent, was the relation changed, by the particular indorsement of the check, and its subsequent certification?

The defendant, in the name of "A. Proskauer & Co., agents," opened, in January, 1883, a deposit account with the garnishees, who were bankers. On this account the defendant deposited checks payable to "A. Proskauer & Co., agents," which were entered in the pass-book, and drew checks, in the same name, "on funds so deposited." The check in question was indorsed: "*For deposit, A. Proskauer & Co., Agents.*" The import and effect of such indorsement must be considered in the light of the attendant circumstances, and of the previous dealings between the parties. Where a depositor has for some time previously kept a deposit account with a banker, on which he was accustomed to deposit checks payable to him, entries of

which were made in his pass-book, and to draw against such deposits, such an indorsement, in the absence of a different understanding, is presumptive of more than a mere agency or authority to collect. The special purposes for which an indorsement for deposit is made, under such circumstances, may be readily inferred. It was a request and direction to the garnishees to deposit the sum to the credit of the defendant, and conferred on them, not only authority to collect, but also authority to put the check in such form, and use it in such manner, as in their judgment and discretion, having reference to the condition and necessities of their business, would make it most available to their protection. The effect of the indorsement, for the consummation of this purpose, is to vest the garnishees with the title to, and control of the check. If, in such case, the check is not paid, the banker depends for safety and indemnity on the liability of the drawer, and the security of the indorsement.

4. Although a check does not call for acceptance, and the holder can present it only for payment, the certification of checks is a means in constant and extensive use in the business of banking, and its effects and consequences are regulated by the law-merchant. A certified check has a distinctive character, as a species of commercial paper, and performs important functions in banking and commercial business. The certification constitutes a new and distinct contract between the holder and certifying bank, which becomes the debtor of, and only liable to the holder. The funds of the drawer have, in legal contemplation, been withdrawn from his credit, and appropriated to the payment of the check. He and the indorser, if any, are released from all further liability; as to them, the check is paid.

In *Merchants' Bank v. State Bank*, 10 Wall. 604, it is said:

" By the law-merchant of this country, the certificate of a bank that a check is good is equivalent to acceptance. It implies that the check is drawn upon sufficient funds in the hands of the drawee, that they have been set apart to its satisfaction, and that they shall be so applied whenever the check is presented for payment. It is an understanding that the check is good then, and shall continue good; and this agreement is as binding on the bank, as its notes of circulation, a certificate of deposit payable to the order of the depositor, or any other obligation it can assume. The object of certifying a check, as regards both parties, is to enable the holder to use it as money. The transferree takes it with the same readiness and sense of security that he would take the notes of the bank. It is available also to him for all the purposes of money. Thus it continues to perform its important functions, until in the course of

business it goes back to the bank for redemption, and is extinguished by payment."

In *Willetts v. Phœnix Bank*, 2 Duer, 121, Chief-Justice OAKLEY said : "When the business of the bank is properly conducted, it is the duty of the officer certifying the check to cause it to be immediately charged, as paid, in the account of the drawer; and when this is done, the sum thus charged will remain as a deposit in the bank, to the credit of the check, and be forever withdrawn from the control of the maker, except as a holder of the check. Such a deposit stands upon exactly the same ground as every other." And STRONG, J., said : "Checks on a bank, marked 'good,' are to be regarded as evidence of deposit to the credit of the holder."—*Girard Bank v. Bank of Penn Town.*, 39 Penn. St. 92. If the check is certified to be good, "in contemplation and by operation of law, it is the same as if the funds had been actually paid out by the bank to the holder, by him deposited to his own credit, and a certificate of deposit issued to him therefor."—Dan. on Neg. Inst. § 1603 ; Morse on Bank., 307–315 ; *First Nat. Bank v. Leach*, 52 N. Y. 350. When the check was certified, it ceased to possess the character, or to perform the functions, of a check, and represented so much money on deposit, payable to the holder on demand. The check became a basis of credit —an easy mode of passing money from hand to hand, and answered the purposes of money. The garnishees, by accepting a certification of the check, made it their own, and the relation of debtor and creditor was created between them and the defendant.

5. The rule, that where a defendant has the election to sue for a tort committed, or to waive the tort and to sue for the money received by the *tort-feasor*, the relation of debtor and creditor does not exist until the defendant elects to sue for the money, and that his creditors can not defeat his election by bringing process of garnishment, does not apply. The garnishees committed no wrong, or tort, of which the defendant can complain. They had a legal right to accept a certification of the check, and leave the money on deposit with the People's Savings Bank, instead of transferring it to their own vault. Certification of the check was within the authority vested in the garnishees by its deposit and indorsement, and is a mode, authorized by the law, by which it could be made available to them.. The defendant obtained his purpose—a deposit with the garnishees to the amount of the check, against which he was entitled to draw—not by the wrongful and unauthorized act of the garnishees, but in pursuance of his request, as evidenced by his deposit and indorsement of the check. It was not wrongfully taken from his possession, nor was it converted

by the garnishees to their own use, other than for the purpose contemplated and intended by the parties. The defendant has no right of action against them, as for a tort, on account of the certification of the check. Its certification was a payment as between the defendant and the garnishees, and thereafter they were bound to pay his checks in money, and were answerable to him for money had and received.

The garnishment operated as a lien, from the time of service, on any money or effects of the debtor in the possession of the garnishee; and by no act of the debtor, or of the garnishee, or of both, can the lien be defeated.— *Warfield v. Campbell*, 38 Ala. 527; *Dore v. Dawson*, 6 Ala. 712. While the check is, ordinarily, executory and revocable, and the drawer may countermand its payment; when the bank has certified the check, and thereby comes under obligation to the holder to pay it on presentment, the power to revoke ceases, as effectually as if actual payment had been made. The drawer's authority over the funds, on which it is drawn, terminates *pro tanto*. The same effect is produced when the law, by proper legal process, intervenes, and attaches or sequesters the fund.—Morse on Bank., 305. The notices, by which the drawer forbade the garnishees to collect the check, and the defendant revoked their authority to present it for payment, having been given after the certification of the check, and after the service of the garnishment, were ineffectual to change the rights of the plaintiff, or to displace any lien acquired by the legal process.

By what we have said we have not intended to intimate any opinion as to the validity of the claim of Newgass & Co., or of Leinkauf. These questions have not yet arisen. All we decide is, that, on the facts set out in the answer, if no adverse claim were interposed, the plaintiff is entitled to judgment against the garnishees; but, it appearing there are adverse claimants, notices should be issued to them, under the statute, to propound their claims, and contest the plaintiff's right to the fund.

Reversed and remanded.