# Western Union Telegraph Co. *v.* Louissell.

*Improper Transmission of Message.*

(Decided November 19, 1914. Rehearing denied December 15, 1914. 66 South. 839.)

1. *Telegraphs and Telephones; Mistake; Pleading and Proof; Instruction.*—Where the action was for damages because of a change in the spelling of the payee's name in a telegram directed to a bank notifying it to decline payment of the draft, which the bank paid after receiving the telegram, and the complaint alleged that had the telegram been properly transmitted, it would have been the duty of the bank to decline to pay the draft and that by defendant's negligence, the bank paid the draft and charged the amount thereof to plaintiff's account, and the uncontradicted evidence showed the fact of the alleged error in the telegram, as well as the other material allegations of the complaint, the court properly instructed the jury that if they believed the evidence, their verdict should be for plaintiff for the amount paid on the draft with the interest from the date of payment, not to exceed the sum claimed.

2. *Same; Defensive Matter.*—Where the action was for damages for the payment of a draft in consequence of a mistake in the spelling of the payee's name in a telegram directing the bank not to pay the draft, the complaint need not negative knowledge of the bank that there was a mistake in the telegram as this was a matter of affirmative defense.

3. *Same; Damages; Measure.*—Where the sender of a telegram stopping payment of a draft suffered loss from a mistake in the spelling of the name of the payee in the telegram as delivered to the bank, in consequence of which the bank paid the draft and charged the amount thereof to the sender's account, the measure of his damages

was the amount paid on the draft with interest from the date of payment although the money so paid by the bank went in discharge of a debt due from the plaintiff to the payee in the draft, where the sender did not avail himself of the payment by insisting on it as a satisfaction of the debt.

4. *Names; Draft; Sufficiency; Idem Sonans.*—A notice to a bank not to pay a draft to James F. Manison is not, as a matter of law, notice not to pay a draft in favor of James J. Mason, such as obligates the bank on which it is drawn to refuse payment of the draft.

5. *Banks and Banking; Draft; Right to Countermand Payment.*— As the giving of a draft is not an assignment to the payee of the funds in the drawee's hands, the drawer may countermand the payment, and by notice, obligate the drawee to refuse payment.

6. *Same; Duty of Bank.*—Where a bank received a customer's telegram stopping the payment of a draft, it was bound to obey the telegram according to its exact tenor without inquiring whether any mistake had been made in transmitting it.

7. *Payment; Another's Debt; Effect.*—By paying the debt of another without his request, a person cannot make that other his debtor, unless such other avail himself of the payment by insisting on it as a satisfaction of the debt.

APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

Action by Wm. H. Louissell against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Affirmed.

The second count, as amended, is as follows:

Plaintiff claims of defendant * * * as damages for that heretofore, to wit, * * * defendant, being then and there a telegraph company doing business in the state of Alabama, and engaged in the transmission of messages from Repton, Ala., and other points, to Mobile, Ala., for compensation, undertook and promised, for a valuable consideration, and which was paid by plaintiff's agent, to transmit from Repton to Mobile, Ala., and deliver to the City Bank & Trust Company, a telegraphic message reading as follows: "Manistee, Ala., May 17, 1905. City Bank & Trust Co., Mobile, Ala., Decline payment James J. Manson for $250, unless further advised by me. William H. Louissell." And plaintiff avers that prior to sending such message plain-

tiff gave a draft to James J. Manson upon the City Bank & Trust Company, for $250, which he had the right to and desired to revoke; that had said telegram been duly and properly transmitted, the City Bank & Trust Company would have declined payment of said draft, as instructed by said telegram, but that by reason of the said negligence of said defendant, the name of James J. Manson was erroneously changed in the telegram as delivered to James F. Manison, by reason of which said error, the City Bank & Trust Company were misled as to the draft which plaintiff intended to revoke, and by reason of such error paid said draft, which plaintiff had issued to said James J. Manson, and charged the same to plaintiff's account, to the great damage of plaintiff, wherefore he sues.

The demurrers were: That the names were idem sonans. That the telegram as delivered was amply sufficient to put the bank on notice as to what was intended. The complaint does not allege that the bank was, in fact, misled by the alleged error in the telegram. The error was not, in fact, misleading. Plaintiff was actually indebted to payee in the draft for the full amount of the same for aught that appears, and, having paid his own debt, cannot complain. For aught that appears the draft has been indorsed by the payees and delivered to a bona fide holder, at the time the message was filed. Failure of complaint to show that plaintiff had a right to revoke the draft and stop the payment at the time the telegram was sent, because it does not aver that the draft was in fact presented to the bank and paid by it after the alleged mistaken telegram had been, in fact, received by it.

GEORGE A. FEARONS, WILLIAM C. FITTS, and LEIGH & CHAMBERLAIN, for appellant. For former report of this

case, see 161 Ala. 231; 4 Ala. App. 493. The court erred in overruling demurrers to the second count as amended.—37 Cyc. 1754-8; 177 Fed. 63; 28 L. R. A. (N. S.) 554; 27 Am. Rep. 485; 56 S. E. 863; *Lawton v. Rickerts,* 104 Ala. 430; *Sloss-Sheffield v. Moore,* 6 Ala. App. 317; *V. C. Co. v. Mason,* 62 South. 253; *B'ham L. & D. Co. v. Oden,* 146 Ala. 495; *L. & N. v. Cornelius,* 60 South. 740; *B. R. L. & P. Co. v. Abbott,* 60 South. 971; 37 Cyc. 1673; *Blount v. Wes. U. T. Co.,* 126 Ala. 105. The court erred in overruling defendant's objection to the question propounded to plaintiff's witness Tonsmeire, as a witness cannot testify to conclusions drawn by him from the facts, but must state the facts.—*Ferguson v. State,* 134 Ala. 63; *U. P. Dentist v. Dement,* 60 South. 421; *L. & N. v. Bogue,* 58 South. 492; *W. Pratt Co. v. Andrews,* 150 Ala. 368, and cases there cited. The court erred in instructing that if the jury believed the evidence they must find for plaintiff for the amount of the draft, plus the interest, not exceeding the amount claimed.—*W. U. T. Co. v. Louissell,* 161 Ala. 231; *Smoot v. M. & M. Ry. Co.,* 67 Ala. 13, and authorities cited first above. The court erred in refusing affirmative instructions requested by defendant.—5 Cyc. 540. The court erred in declining to instruct that unless they were reasonably satisfied that the bank was misled as to the draft plaintiff intended to revoke, then plaintiff was not entitled to recover more than the price of the telegram.—37 Cyc. 1670-1; 56 S. E. 863.

GREGORY L. & H. T. SMITH, for appellee. The complaint sufficiently makes it to appear that if the telegram had been delivered as sent, it would have been the duty of the bank to stop payment, and that the bank could not have charged the draft against plaintiff's account whether it paid it or not.—*Peoples S. B. & T. Co.*

*v. Lacey,* 40 South. 346; *Elder v. Franklin Nat. Bank,* 55 N. Y. Supp. 576. It was not necessary that plaintiff should negative all possible explanations and defenses that could have been imagined.—*McClesky v. Howell C. Co.,* 147 Ala. 577; 104 S. W. 1088. There was no duty on the bank to take care to ascertain the correctness of the message received by it, but it could rely upon the message as written.—*W. U. T. Co. v. Merritt,* 46 South. 1024; 44 N. W. 1064. As the court gave the affirmative charge for plaintiff properly and on request, no injury resulted from the refusal of charges requested by defendant.—*Christian v. Denmark,* 156 Ala. 390; *Smith v. Marx,* 93 Ala. 311.

THOMAS, J.—This case has been once before our Supreme Court (*West. Union Tel. Co. v. Louissell,* 161 Ala. 231, 50 South. 87), which was before the creation of this court. Upon reversal there for the error of the trial court in giving the general affirmative charge in favor of the plaintiff (appellee here), the case was again tried, which resulted in a verdict for the defendant (appellant here). That verdict was, upon motion of the plaintiff, set aside, and a new trial granted, the action of the lower court in doing which was, on subsequent appeal to this court by defendant, affirmed.—*West Union Tel. Co. v. Louissell,* 4 Ala. App. 493, 95 South. 186. On the last trial the court again gave the general affirmative charge in favor of plaintiff, and there was verdict and judgment accordingly. The defendant again appeals, assigning as error the action of the court in giving such charge; in refusing to give several special charges requested; in overruling a demurrer to the complaint; and in overruling defendant's objections to two questions propounded by plaintiff to one of the latter's witnesses in the course of his examination on the stand.

The last trial was had upon count 2, as last amended, of the complaint, to which there was no plea, except the general issue, and which count, together with the demurrers thereto, the reporter will set out. The status of the pleading, therefore, as well as of the evidence, is somewhat different from what it was on the former appeals, meeting deficiencies there intimated; and, in the light of these changes, which will be hereinafter noted, what was said by our Supreme Court and by this court on such former appeals will, in connection with what we here say, be sufficient to an understanding of the case and to demonstrate, we think, the correctness of our conclusion that the demurrers to said count 2, as last amended, of the complaint were without merit, and that the trial court committed no error, either in overruling them or in giving the general affirmative charge as requested by plaintiff.

Our Supreme Court, while considering the case as presented to it on the first appeal, in reviewing the action of the lower court in giving the general affirmative charge for plaintiff, among other things said:

"One material allegation of the complaint, as to which there was no direct proof, and of which it is difficult to see how there could be direct proof, or any proof other than that by a jury drawn as an inference from the facts, is this: *'That had said telegram been duly and properly transmitted the City Bank & Trust Company would have declined payment of said draft as instructed by said telegram,* but that by reason of the negligence of the defendant,' etc. What direct and uncontradicted evidence there was to prove this allegation we are unable to find." The complaint was so amended on the present trial as to obviate the necessity for any such proof by substituting in lieu of the allegation so quoted, the following allegation: *"That had said telegram*

*been duly and properly transmitted and delivered to said City Bank & Trust Company, it would have been the duty of the City Bank & Trust Company to decline payment of said draft as instructed by said telegram, but that by reason of the negligence of the defendant,"* etc.

With this exception, said count 2 of the complaint, which was so under consideration on the former appeals, is unchanged from what it was then, except also that in lieu of the following allegation then in the count, to wit:

*"By reason of which said error the City Bank & Trust Company were misled as to the draft which plaintiff intended to revoke, and by reason of such error paid the said draft which plaintiff had issued to James J. Manson, and charged the same to plaintiff's account,"* etc. —the following allegation was substituted, to wit:

*"By reason of which said error it did not become the duty of the City Bank & Trust Company to decline payment of said draft, which was drawn in favor of James J. Manson, and the City Bank & Trust Company had a right to and did pay said draft, which plaintiff had issued to James J. Manson, and charged the same to plaintiff's account,"* etc.

The effect of this last change of averment was likewise, as in the case of the other change first noted, to relieve the necessity of making proof of a fact—alleged in the count before amendment and omitted, as seen, by the amendment—that was not susceptible of direct and positive proof, to wit, that the said City Bank & Trust Company was *misled* by the said error in the telegram. As to whether it was misled or not had reference to a mental status—a condition or state of things existing in the mind—a fact of such a nature that it could only be proved as an inference from other facts. So long as

such an allegation remained in the count, it was necessary, under the decision of our Supreme Court mentioned, that the case go to the jury, and not be withdrawn from them by the affirmative charge, since it was their function, and not the court's to say whether or not such an inference should be drawn from the evidence. The two mentioned amendments, therefore, removed from the complaint every allegation that was not susceptible of direct and positive proof; and, there having been on this trial positive and direct and uncontradicted proof of the fact of the alleged error in the telegram (which was not the fact when the case was under review by our Supreme Court, as will appear from an examination of their decision), and also direct, positive, and uncontradicted proof of every other material allegation of the complaint, as so amended (which, as noted, was likewise not the fact when the case was before our Supreme Court) we are of the opinion that, in here holding that the lower court did not err in this trial in giving the general affirmative charge for plaintiff, we are acting, not in conflict, but in entire accord, with the said decision of our Supreme Court.

Under the complaint as last amended, we are clear in the opinion that, if, as hypothesized in said charge, the jury believed the evidence, there was no alternative but to find, as stated in the charge, a verdict for the plaintiff. The defendant introduced no evidence whatever; but the chief insistence of its counsel (we judge to be) is that each and both of the amendments, as pointed out, of the count upon which the trial was had, and which amendments wrought, as seen, material changes in such count, were such as to render the count demurrable in this: That the plaintiff, in each of such amendments, in order to obviate the previous necessity of proving facts that were susceptible of proof only by inferences to be

drawn by the jury as before pointed out, alleged a conclusion of law as to the duty of the said City Bank & Trust Company, with reference to the payment and non-payment of the draft, that the law does not authorize to be drawn from the facts set forth in the count.

We agree that the legal conclusions are alleged, as contended, but we do not agree that they are not warranted by the facts alleged. On the contrary, we are of opinion that they are. The giving of a draft or checck does not operate as an assignment to the payee of the funds in the hands of the drawee, but the drawer has the right to countermand its payment, and if he does so by notice to the drawee, before the presentation of the check or draft, the drawee would be under duty, as alleged in the count, not to pay or accept it.—*People's Savings Bank v. Lacy,* 40 South. 346; *Nat. Com. Bank v. Miller,* 77 Ala. 168, 54 Am. Rep. 50; *Sands, etc. v. Matthews,* 27 Ala. 399; *Anderson v. Jones,* 102 Ala. 537, 14 South. 871; *Andrews v. Frierson,* 134 Ala. 626, 33 South. 6. And we are of opinion, as a matter of law, that notice to a drawee bank not to pay a draft, stated in the notice to be drawn in favor of "James F. Manison for $250.00," is not, in the absence of more, notice to it not to pay a draft then actually drawn and subsequently presented in favor of "James J. Manson for $250.00." The bank had a right and was under duty to act upon the letter of the notice or instruction, unless it knew that there was error therein. Presumptively—from the facts alleged in the count—it had no such knowledge, but had a right to assume, and to act upon such assumption, that the defendant telegraph company (who, in transmitting and delivering to the bank plaintiff's message, acted as plaintiff's agent) correctly transmitted such message.—*Western Union Tel. Co. v. Farmers' & Merchants' Bank,* 7 Ala. App. 637, 62 South. 250. This message, as delivered to the bank, read, as

was alleged and as was proved without dispute on this trial: "Decline payment of James F. Manison for $250.-00, unless advised further by me." Such a message, in and of itself, furnished the bank no warrant or authority for declining payment of a draft drawn by plaintiff on the bank for $250 in favor of "James J. Manson"; and, consequently, so far as any direction or information contained in said message was concerned, the bank was under duty to pay the latter named draft when presented. If, independent and outside of the message, the bank knew facts, or came into the possession of facts, at any time before it accepted or paid the latter named draft, from which it knew or was bound to know that there was a mistake in the message, and that the plaintiff intended by the message to direct them not to pay the draft drawn in favor of "James J. Manson" (for instance, if the bank had known that, prior to the time the plaintiff sent the message, he had given a draft to "James J. Manson" for $250, and had not given one at all to "James F. Manison" or any other person of like name), then probably the bank, after receipt of the message directing it not to pay the "James F. Manison" draft, would have been under duty to decline payment of the "James J. Manson" draft when presented. Presumptively, however, the bank had no knowledge that there was a mistake in the telegram; and, this being true, the plaintiff was not required to negative, by allegation, the existence of such knowledge. If it in fact existed, such knowledge, as a result of the changed averments of the complaint noted, became defensive matter, and the defendant, under the plea of the general issue, was at liberty to prove any facts from which it might be inferred that the bank had such knowledge. If it did have knowledge of the mistake in the telegram, then defendant's negligence in erroneously transmitting

the telegram was not, and could not be, said to have been the proximate cause of the injury; for in such case, notwithstanding the error, the bank knew better, and should have declined payment of the draft. It (the bank), and not the defendant, would, in the event it knew of the error, have been liable to the plaintiff for the sum of money paid out on the draft.

While it was not necessary, we think, as stated, to the making out of plaintiff's prima facie case, yet he introduced the bank officials, who testified that they had no knowledge of the mistake. The defendant, as said, introduced no testimony whatever. The bare fact of the similarity between the name "James F. Manison," in whose favor the telegram to the bank, instructing nonpayment, stated the draft to be, and the name "James J. Manson," the payee of the draft subsequently honored by the bank, does not, standing alone, of and by itself, afford, as contended, any evidence, inferential or otherwise, that the bank knew or should have known that there was a mistake in the telegram, and that such telegram was really intended to stop payment of the "James J. Manson" draft. There are so many names, and differences in distinct names are often so slight, people are so numerous, commerce so extensive and diversified, and the business dealings and other transactions of individuals, involving the payment of money and the drawing of checks or drafts, are so varied, both as to character and as to the persons with whom such individuals may deal, that it would be monstrous, we think, to assume that when a customer wires from a distant point his bank not to pay a draft stated to have been drawn by him in favor of "James F. Manison" for $250, the bank should know, from such telegram alone not to pay such customer's draft in favor of "James J. Manson" for $250, when, subsequent to the

receipt of the telegram, such draft is presented to the bank. With this telegram before it or in mind, when "James J. Manson" presented his draft for payment— although his name is similar to the name ("James F. Manison") stated in the telegram—how did the bank know but what the plaintiff had, at or before the time he sent the telegram, given two drafts for $250—one to "James J. Manson" and one to "James F. Manison" —and but what the latter draft would be also presented later? The bank had a right, and it was its duty, to so presume, unless it knew to the contrary. It would have acted at its own peril if it had done otherwise. Nor was it under legal duty to inquire as to whether or not a mistake had been made. The bank is not the guardian of its customers—at least, not to this extent— and when one of the latter gives, or sends by agents, as in this case, an instruction not to pay a particular named draft, the bank is under no obligation, the instruction being, as here, clear and unambiguous, to inquire if a mistake has not been made. It may stand upon the letter of that instruction; and if a mistake has been made in such instruction by the customer himself, then he, of course, is in no position to complain against any one; but, if a mistake has been made by his agent in transmitting such instruction, then the agent, as the defendant was, is responsible for its negligence in that particular, and liable for the damages proximately resulting therefrom.

Suppose, instead of being a suit by the plaintiff against the defendant telegraph company for $250 and interest for negligence in erroneously transmitting said message, this was a suit by the plaintiff against the said bank for $250, and interest, for having paid, after receiving such message, plaintiff's draft to "James J. Manson" for $250. The plaintiff certainly could not

recover, by showing only that before the payment of said draft the plaintiff sent a telegram to the bank which, when delivered to the bank, directed them not to pay plaintiff's draft to "James F. Manison" for $250. *People's Saving Bank v. Lacy, supra; Nat. Com. Bank v. Miller, supra.* Such evidence, standing alone, would not only be insufficient to send the case to the jury; but a complaint in such a case, which alleged that the bank was notified, in advance of the payment or acceptance of the "James J. Manson" draft not to pay the "James F. Manison" draft, would have been demurrable. To make a case against the bank, even a prima facie one, something more would have to be shown—that is, that the bank knew certain facts from which, when it received the telegram, it was bound to know that it had reference to the James J. Manson draft.

The defendant's only chance to escape liability for its negligence in erroneously transmitting the telegram was to make a case against the bank by showing that, notwithstanding defendant's error, the bank knew, or was in the possession of such facts that from them it was bound to know, of the mistake before it paid the Manson draft. There is no evidence in the case tending to so show either directly or inferentially.

What we have said and the conclusions reached with reference to the demurrers and the affirmative charge render it unnecessary to consider the action of the court in its other rulings complained of and before mentioned.—*Western Union Tel. Co. v. Whitson,* 145 Ala. 426, 41 South. 405; *Griffin v. Bass Foundry & Machine Co.,* 135 Ala. 490, 33 South. 177; *Bowling v. M. & M. Ry. Co.,* 128 Ala. 556, 29 South. 584.

The judgment appealed from is affirmed.

Affirmed.

### ON REHEARING.

The affirmative charge given by the court for the appellee, as referred to in the foregoing opinion, read as follows:

"The court charges the jury that if they believe the evidence in this case, their verdict must be for the plaintiff for $250, with interest from the date of the payment of the check by the bank to the rendition of the verdict; the amount of the verdict not to exceed the sum claimed in the complaint."

It is urged by the appellant in application for rehearing that, although it be conceded that such charge was correct in so far as it instructed the jury that if they believed the evidence they must find for plaintiff, yet such charge was erroneous in that it went further and instructed them also that, if they found for the plaintiff, the amount of damages they should assess would be the value of the $250 of plaintiff's money that had been so paid out by the bank on the mentioned check, together with interest thereon.

This is the rule for the admeasurement of damages obtaining in a case where the depositor sues the bank for money of his that the bank has paid out on a check that had, by notice to the bank, been revoked before such payment or an acceptance (*People's Savings Bank & Trust Co.*, 40 South. 346) ; and we see no reason why a different rule should obtain here, where the money is paid out, not, as in the other case, because of the negligence of the bank in failing to give heed to the revoking notice, but as a proximate result of the negligence of defendant telegraph company in failing as plaintiff's agent to transmit correctly to the bank such revoking notice. The fact, if it be a fact, as suggested by appellant's counsel, though we do not think the evidence sus-

tains the contention, that the amount of plaintiff's money so paid out by the bank as a result of defendant's negligence went in discharge or part payment of a debt or obligation due by plaintiff to the drawee of the check or draft does not, we think, alter the case or lessen the amount of damages that plaintiff is entitled to recover, since there is here no evidence whatever tending to show that the plaintiff authorized the payment (all of the evidence being, as seen, to the contrary), or that he subsequently in any way ratified it.

The rule is well settled that "no man can make another his debtor without his consent"—that no man can by paying the debt of another without his request make that other his debtor, unless that other avails himself of the payment by insisting on it as a satisfaction of the debt.—*Denby v. Mellgrew,* 58 Ala. 147. There is, as said, no evidence whatever that plaintiff has availed himself of the payment by insisting on it to the drawee as a satisfaction of the debt. This without more is sufficient to dispose of defendant's contention on rehearing; consequently we need not, and do not, consider as to whether there are not also other sufficient answers.

The other suggestion of appellant on application for rehearing, which is, in substance, that if we adhere to our holding in the original opinion to the effect that the bank had the right to act on the telegram as delivered to it and was not bound to make inquiry, it will result in laying down a rule that a bank could act on a forged telegram, and that, if ignorant of the forgery, it could escape liability, is, we think, indeed farfetched and has no bearing whatever on the case we consider and are considering, where no question whatever of forgery has arisen. The authenticity and genuineness of the telegram here is admitted. Nor is there anything in what we have said in the opinion to conflict with the

holding, quoted in appellant's application for rehearing from the case of *Curtice v. London City & Midland Bank* (British Ruling Cases, 417), as is too clear from such quotation itself to need comment, to wit:

"Though a telegram countermanding a check may reasonably be acted on by a banker, at least to the extent of postponing the honoring of the check until further inquiry can be made, yet a banker is not bound to accept an unauthenticated telegram as sufficient authority for the serious step of refusing payment."

Such is not this case at all.