■ We are requested to disregard the irregularities in the record and decide the case on its merits. We have read the record and all of the testimony carefully. It may be that Carrie Harrod endeavored to over-reach her brother and sisters. But after a careful study of the testimony we are at most left in doubt as to this. When we entertain no more than a doubt as to the correctness of the Chancellor's conclusions, the judgment will stand affirmed.

The judgment is affirmed.

John L. Smith, Catlettsburg, for appellant.

W. H. Dysard, Dysard & Dysard, Ashland, for appellees.

## KENTUCKY–FARMERS BANK v. STATON et al.

### Court of Appeals of Kentucky.

### Jan. 9, 1951.

CAMMACK, Chief Justice.

This appeal is from a judgment against the Kentucky-Farmers Bank for its failure to stop payment on a check drawn by the appellees. It is the contention of the Bank that a peremptory instruction should have been given in its favor.

The appellees were doing business as the Susan Baker Distributing Company in Ashland. They bought merchandise from Susan Baker Products, Inc., in New York. On July 10, 1947, they had $5580 on deposit with the appellant. On that date Check No. 169 was drawn against their account in favor of Susan Baker Products in the amount of $1805 in payment of a bill of goods. According to the business relations between the appellees and Susan Baker Products, the appellees were entitled to a credit of $170.06 on the $1805 invoice. This was indicated on the face of the check. However, on the stub of Check No. 169 the deductions were properly made and the amount of the check was shown as $1634.94. It was the belief of the appellees from the date the check was issued until they learned that the $1805 check had been paid that the amount of Check No. 169 was $1634.94.

Because of a question as to credits due the appellees for goods previously delivered to them by the Susan Baker Products, they stopped payment on Check No. 169. They

called the Bank and gave them the full particulars concerning Check No. 169 as shown by the stub in their checkbook. The evidence is undisputed to this point.

The appellees introduced proof also showing that they talked with Mr. Gunnell, president of the Kentucky-Farmers Bank, about the check on which payment had been stopped, telling him that this was the only check they had out to Susan Baker Products. They said Mr. Gunnell told them that payment would be stopped; that he went to the post office himself; and that he would take care of the matter personally. The proof showed also that Check No. 169 was the only check outstanding to Susan Baker Products, and that a check in a similar amount had not been drawn in favor of that concern for from 60 to 90 days prior to July 10, 1947. On the other hand, Mr. Gunnell testified that when he was notified first about stopping payment on the check he put a "Stop Payment" card with the information furnished him on the account sheet of the appellees. This card showed the date payment was stopped on the check, the date of the check, the number of the check, the name of the payee, and gave the amount as $1634.94. Mr. Gunnell denied, however, that he was ever told to stop payment of any check made to Susan Baker Products, regardless of the amount. He said further that had such a request been made he would have marked the account "Pay No Checks To Susan Baker Products."

The case was submitted to the jury under the following instruction:

"No. 1. The court instructs the jury that the stop payment notice or notices given by the plaintiffs referred to a check in the amount of $1634.94, whereas the true amount of the check was in the amount of $1805.00. The jury will therefore find a verdict for the defendant, unless the jury shall find and believe from the evidence that the plaintiffs in ordering the bank to stop payment did so in such way that the defendant's president did know or by the exercise of ordinary care should have known that the check paid by the bank was the check on which payment had been stopped, in which event the jury will find for plaintiffs in the amount of $1805.00 with interest from July 17, 1947.

" 'Ordinary Care' as used in this instruction means such care as a person of ordinary prudence usually exercises under circumstances like or similar to that proven to have existed in this case."

 Payment may be stopped upon a check where a bank is given positive and unqualified notice. See Stanley on Banking Law of Kentucky, section 128, p. 115. The appellant makes the contention, and offers proof in support thereof, that the figure named as the amount of a check is controlling in giving its description. It may be conceded that the amount of the check is of major significance, but it does not necessarily follow that this single item of information would be controlling in a transaction such as the one under consideration. Here the Bank was given correct information concerning the date of the check, the number of the check, and the name of the payee; but was given erroneous information as to the amount of the check. In addition thereto there was proof that the president of the Bank was told that the check under consideration (Check No. 169) was the only one which the appellees had drawn to the Susan Baker Products, and that he was told also why they desired to have payment stopped on it. Under the circumstances we think the court submitted the case to the jury under a proper instruction.

 The appellant raises some question as to its right to be subrogated to any right of action Susan Baker Products might have against the appellees. The appellees are in agreement with this position, but contend that the question has no place in this case. We are in accord with that view.

Judgment affirmed.