366 So.2d 251 (1978)
John D. SHERRILL, Jr.
v.
FRANK MORRIS PONTIAC-BUICKGMC, INC., a corporation, et al.
77-334.
Supreme Court of Alabama.
December 1, 1978.
Rehearing Denied January 19, 1979.
*253 John W. Cooper of Cooper & Huey, Birmingham, for appellant.
Stephen R. Arnold of Jones, Arnold & Roden, Birmingham, for appellee, Frank Morris Pontiac-Buick-GMC, Inc.
C. Lee Reeves of Sirote, Permutt, Friend, Friedman, Held & Apolinsky, Birmingham, for appellee, Bank of the Southeast.
C. John Holditch, Birmingham, for appellee, First Ala. Bank of Birmingham.
BLOODWORTH, Justice.
This is an appeal from final judgment and from denial of a motion for new trial in a suit for declaratory judgment and other relief brought by appellant, Dr. Sherrill. We affirm in part, reverse in part and remand.
Dr. Sherrill entered into an agreement with United Motorists Association (UMA), called a "Fleet Plan." UMA would locate automobiles and have them delivered to its customers. The customers would then execute a security agreement and note to UMA, and the note would be discounted to a bank, in this case appellee Bank of the Southeast. The bank would credit UMA's account in payment for the note. UMA would then pay the car dealer by check or draft which, when presented by the dealer, would be paid by the bank. The customer-buyer would make payments on the note to the bank and would later deliver the used car to UMA which could then keep it by making a final "balloon" payment equal to the "residual" value of the car. Alternatively, the customer could keep the car by making the final payment to the bank. The plan purportedly had tax advantages and enabled customers to purchase automobiles at a "fleet discount."
Two transactions are involved in this suit. In the first, Dr. Sherrill obtained a Buick Skyhawk and made eight or nine payments on his note to the Bank of the Southeast. The dealer was paid by UMA. The Skyhawk had defective brakes, so Dr. Sherrill turned it in to UMA for a new car, a Buick Skylark. The dealer in this second transaction, appellee Frank Morris Pontiac-Buick-GMC, Inc. (Morris), was given a draft by UMA in payment. This draft was dishonored by Bank of the Southeast due to insufficient funds. Two weeks after delivery of the Skylark, UMA went bankrupt. Bank of the Southeast sold the Skyhawk, which had been turned in to UMA, but there was still a deficiency remaining on Dr. Sherrill's first note. No payments were made on the second (Skylark) note. Morris demanded payment or return of the Skylark from Dr. Sherrill, so he paid Morris by check drawn on appellee First Alabama Bank of Birmingham. The next day, after consulting a lawyer, Dr. Sherrill attempted to stop payment, but the check was paid anyway.
Dr. Sherrill then brought suit to determine his rights and obligations under the two notes and for a return of his money from Morris or First Alabama Bank. Bank of the Southeast counterclaimed on the two notes. The court found Dr. Sherrill liable on both notes and further held that neither Morris nor First Alabama Bank was liable to Dr. Sherrill.

*254 I

Bank of the Southeast
Dr. Sherrill contends that Bank of the Southeast is not a holder in due course of the two notes and that the cars are consumer goods subject to the Mini-Code, § 5-19-1 et seq. (Code 1975). If these contentions are correct, Bank of the Southeast would be simply a holder, subject to defenses which Dr. Sherrill would have against UMA.
Holder in due course is defined in § 7-3-302 (Code 1975) as follows:
"(1) A holder in due course is a holder who takes the instrument:
(a) For value; and
(b) In good faith; and
(c) Without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."
Dr. Sherrill challenges each one of these elements.
First, he contends that Bank of the Southeast did not give value for the notes because it did not see that the entire consideration was paid to the sellers, the automobile dealers. Dr. Sherrill apparently equates "value" and "consideration" with the purchase price of the automobile. However, UMA's discounting of the notes to Bank of the Southeast was not done in exchange for payment to the car dealers. Bank of the Southeast gave value for the notes by crediting UMA's account. UMA was responsible for paying the car dealers, and Bank of the Southeast was under no duty to police UMA in the payment of its obligations. Further, the value given in exchange for the notes is not the money paid in installments by Dr. Sherrill to Bank of the Southeast after the notes were assigned. Dr. Sherrill's payments do not determine whether Bank of the Southeast took the notes for value.
Next, Dr. Sherrill contends that Bank of the Southeast did not act in good faith and violated the terms of a special deposit. He alleges that Bank of the Southeast paid Dr. Sherrill's funds to UMA when it was supposed to hold the funds for payment to the car dealer. This contention lacks merit. Dr. Sherrill had no funds in Bank of the Southeast; he merely made installment payments on the assigned notes. There was no special deposit, and if there had been one, it would not have been Dr. Sherrill's, but UMA's. The only funds given UMA were given in the form of a credit to UMA's account in exchange for the notes. Bank of the Southeast was not to hold funds to pay the car dealers, since that was UMA's responsibility.
Third, Dr. Sherrill insists that Bank of the Southeast had notice of a "scheme to sell and finance vehicles . . . on a pseudo lease proposition" and had notice that UMA breached a fiduciary obligation by negotiating the notes for its own benefit and commingling the proceeds with its other funds. These contentions also lack merit, if for no other reason, for the reason that, assuming their truth, Dr. Sherrill himself was a participant therein. Moreover, UMA breached no fiduciary duty by negotiating the notes, and the proceeds from negotiation belonged to UMA, not Dr. Sherrill.
As another factor bearing on good faith and notice, Dr. Sherrill contends that UMA was an agent of Bank of the Southeast, citing United States Finance Co. v. Jones, 285 Ala. 105, 229 So.2d 495 (1969). That case is not an authority in point, since there was no finding in Jones that the mortgagee-assignor was an agent of the assignee, the finance company.
As we held in Wood Chevrolet Co. v. Bank of Southeast, 352 So.2d 1350 (Ala. 1977), agency is a question of fact subject to the ore tenus rule. Here, although there is some evidence in Dr. Sherrill's favor, we do not think the great weight of the evidence supports a finding of agency.
In support of his assertion that any defenses to the notes which he might have against UMA may be asserted against Bank of the Southeast, Dr. Sherrill offers the Mini-Code, § 5-19-1, et seq. (Code 1975), which states as follows in § 5-19-5:

*255 "In a consumer credit sale or consumer lease, the seller or lessor may not take a negotiable instrument other than a check as evidence of the obligation of the buyer or lessee. A holder is not a holder in due course if he takes a negotiable instrument with notice that it is issued in violation of this section. A holder in due course is not subject to the liabilities prescribed in this chapter."
Assuming arguendo that these transactions were consumer credit sales or consumer leases, Bank of the Southeast is still not subject to Dr. Sherrill's defenses since it was not shown that the bank took the notes with notice of a violation of the Mini-Code. See Jefferson v. Mitchell Select Furniture Co., 56 Ala.App. 259, 321 So.2d 216 (1975). The security agreements executed in conjunction with the notes indicate that the vehicles were to be used for "business" purposes, not for "pleasure", as Dr. Sherrill contends was their use. While it is true that actual use determines the character of the transaction, there is no evidence that Bank of the Southeast knew, or should have known, the actual use to which these cars were put. Evidence on this point was heard ore tenus, or partly so, and we do not find that the great weight of the evidence supports the conclusion that Bank of the Southeast had notice of any violation of the Mini-Code or of the actual use to which the vehicles were to be put so that the transactions fell within the Mini-Code.
Dr. Sherrill cites another section of the Mini-Code, § 5-19-11, to support his contention that the bank's counterclaim on the notes should have been abated. This section requires a creditor bringing an action for collection to file an affidavit stating
"(1) There has not been a violation of [the Mini-Code], and
(2) The debtor, if a resident of this state, on information and belief of creditor is a resident of the county in which the action is filed."
This section is inapplicable. The bank's suit for collection is in the form of a counterclaim, so that subsection (2) is not applicable. Moreover, as we have already stated, the evidence shows Bank of the Southeast is a holder in due course without notice of any violations of the Mini-Code. A violation of the Mini-Code by the original creditor is no defense against such a holder in due course, so that subsection (1) is inapplicable.
Dr. Sherrill finally contends that the bank has violated the provisions of the federal Truth in Lending Act. We do not reach this issue. The applicability of this Act was not raised during the trial, nor was it presented on motion for new trial. Dr. Sherrill made no claim for damages under this Act other than a general claim for further relief in addition to a declaration of rights.
An issue not raised in the trial court cannot be raised for the first time on appeal. Brown v. Robinson, 354 So.2d 272 (Ala.1977). Nor will this Court review a case on a theory different from that on which it was tried in the trial court. Bailey v. City of Mobile, 292 Ala. 436, 296 So.2d 149 (1974).

II

First Alabama Bank
Dr. Sherrill claims the sum of $4,860.61 from First Alabama Bank for allegedly paying the check to Frank Morris Buick after a valid stop payment order had been given. The check was payable to the order of "Frank Morris Buick" in the amount of "$4,860.61." It was dated "2/6/1976" and was not numbered. The oral stop payment order, later confirmed in writing, stated the check was payable to "Walter Morris Buick" dated "6/3/76", in the amount of "$4,860.61." The issue is whether the notice described the check with sufficient specificity so as to constitute a valid stop payment order.
The drawer of an uncertified check has the right to stop payment by giving reasonable notice to the drawee bank. If the bank then pays the check, it is liable at common law for the amount paid, based on the relation of debtor and creditor. Commercial Bank v. Hall, 266 Ala. 57, 94 *256 So.2d 198 (1957). Under the UCC, a customer may stop payment on a check by giving an order which is "received at such time and in such manner as to afford the bank a reasonable opportunity to act . . ." § 7-4-403(1) (Code 1975). To be effective and bind the bank, the order must be explicit and describe the check with reasonable accuracy. J. Brady, Law of Bank Checks § 219 (1926); Michie on Banks and Banking ch. 9, § 194, at 518 (1973).
Since the check in question is not numbered, there are only three elements involved in the description given in the stop payment order: amount, payee and date. The amount of the check, $4,860.61, was correctly given. The payee was mistakenly named as Walter Morris Buick. Dr. Sherrill testified that by dating the check 2/6/1976, he meant June 2, 1976 (apparently utilizing the European and military custom). Without deciding whether a reasonable person would so conclude, we note that the date stated in the stop payment order was June 3, not June 2. Thus, only one of the three descriptive elements was correctly stated.
Cases involving stop payment orders usually involve the name of the payee, the amount, the date, and the check number, although any one element alone may not be controlling. It has been held as a matter of law that a notice to stop payment on a draft payable to "James F. Manison" is not sufficient when the draft as written was payable to "James J. Manson." Western Union Telegraph Co. v. Louissell, 11 Ala. App. 563, 66 So. 839 (1914), cert. denied, 191 Ala. 665, 67 So. 1019 (1915). However, since only reasonable accuracy is required, a check payable to "H. Orkand" was held to be covered by a stop order naming the payee as "Harold Orkand" in Levine v. Bank of United States, 132 Misc. 130, 229 N.Y.S. 108 (New York City Mun.Ct.1928). A notice not to pay a draft which gave no date and stated the amount to be "$15,000" when the actual amount was "$17,000" was held insufficient in A. Sidney Davison Coal Co. v. National Park Bank, 201 App.Div. 309, 194 N.Y.S. 220 (1922). However, a notice giving the correct date, number, and payee while misstating the amount was held sufficient in Kentucky-Farmers Bank v. Staton, 314 Ky. 313, 235 S.W.2d 767 (1951); cf. Elsie Rodriguez Fashions, Inc. v. Chase Manhattan Bank, 23 UCC Rep. 133 (N.Y.Sup.1978) (only $.10 difference in amount). A notice giving the proper check number but misstating the date, payee and amount was held insufficient in Mitchell v. Security Bank, 85 Misc. 360, 147 N.Y.S. 470 (App.T.1914), but a single digit mistake in the check number alone was held not to prevent notice from being adequate in Thomas v. Marine Midland Tinkers National Bank, 86 Misc.2d 284, 381 N.Y.S.2d 797 (New York City Civ.Ct.1976).
After consideration of the foregoing authorities and the circumstances in this case, we hold that the stop payment order did not describe the check to be stopped with sufficient accuracy so as to make First Alabama Bank liable for payment. Both the payee and the date were misstated, and there was no check number given. Nothing else was shown which would have given the bank knowledge that the check in question was the one to be stopped. We do not believe that the bank here was afforded "a reasonable opportunity to act" so that it should have found the check and stopped payment.

III

Frank Morris Buick
Dr. Sherrill contends that Frank Morris Pontiac-Buick-GMC, Inc. is obligated to return to him the sum of $4,860.61 allegedly paid by mistake. The trial court held that Morris was entitled to keep the $4,860.61 as payment in full for the Skylark, and further held that Morris had the duty to transfer title to Dr. Sherrill within a reasonable time.
In Wood Chevrolet Co. v. Bank of the Southeast, 352 So.2d 1350 (Ala.1977), a prior case involving the self-same UMA "fleet discount" operation, we held that retention of the Manufacturer's Statement of Origin by the seller does not evidence a clear intention to retain title. Rather, we held that title passes when the car is delivered *257 to the individual owners. Thus, Dr. Sherrill obtained title to the Skylark upon its delivery to him, and was under no obligation to pay $4,860.61 to Morris in order to receive title or retain possession.
The evidence reveals that Morris told Dr. Sherrill he had the option either to pay it $4,860.61, return the car or have the car taken from him through legal action. Dr. Sherrill paid under the mistaken belief that he was indebted to Morris for the price of the car and that he must pay Morris to retain possession and obtain title. In Wood Chevrolet Co. v. Bank of Southeast, supra, the dealer asserted that the individual owners were principals and UMA was agent, and because the principals retained the automobiles, they were liable for payment. We held that the individual owners did not exercise control over the dealings between UMA and the automobile dealer; UMA sought out the relationship with the car dealer, and the dealer looked to UMA for payment. The individual owner was held not liable for the debt owed by UMA to the dealer.
The principle of unjust enrichment permits recovery of money paid to the defendant by the plaintiff under mistake or fraud. Birmingham Broadcasting Co. v. Bell, 259 Ala. 656, 68 So.2d 314 (1953); Roney v. Commercial Union Fire Ins. Co., 225 Ala. 367, 143 So. 571 (1932). This is the essence of the theories of unjust enrichment or of money had and received. Foshee v. General Telephone Co. of Southeast, 295 Ala. 70, 322 So.2d 715 (1975). Moreover, one who receives payment made under mistake by the payor is not relieved of liability simply because the payor could have discovered the facts but was not diligent in doing so. Dudley v. Whatley, 244 Ala. 508, 14 So.2d 141 (1943). Dr. Sherrill, having paid under the mistaken belief, in fact and in law, that he was indebted to Morris, is entitled to the return of the $4,860.61 paid Morris.
Morris argues that Dr. Sherrill's agreement to pay, in return for being permitted to keep the car, is a new contract binding the parties. We do not agree. In reality, Dr. Sherrill had both possession and title. Morris' claim for payment is against UMA, not Dr. Sherrill. There was no consideration for Dr. Sherrill's agreement to pay, and thus no contract.
For the foregoing reason, this cause is due to be reversed and remanded as to appellee Frank Morris Pontiac-Buick-GMC, Inc., but affirmed as to appellees Bank of the Southeast and First Alabama Bank.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
FAULKNER, ALMON and EMBRY, JJ., concur.
TORBERT, C. J., concurs specially.
TORBERT, Chief Justice (concurring specially):
It is well settled that money voluntarily paid under a mistake of fact may be recovered, see, e. g., Citizens' Bank of Fayette v. Blach & Sons, Inc., 228 Ala. 246,153 So. 404 (1934); Jones v. Watkins, 1 Stew. 81 (Ala. 1827), even where the party paying had means of ascertaining the real facts, Hinds v. Wiles, 12 Ala.App. 596, 68 So. 556 (1912). However, it is equally well settled that money voluntarily paid with full knowledge of the facts but by reason of mistake of law cannot be recovered. See Rice v. Tuscaloosa County, 242 Ala. 62, 4 So.2d 497 (1941); Hinds v. Wiles, supra.
In the instant case, Dr. Sherrill made payment under a mistake of fact as well as law. Dr. Sherrill was under the mistaken belief that Bank of the Southeast would not demand payment from him, and that since Morris had not been paid, he did not owe Bank of the Southeast. Dr. Sherrill believed that title to the car was in Morris instead of in him, as was actually the case, so that Morris was the proper party to receive payment. When there is a mistake as to both fact and law, the courts allow the party to recover the money paid. Hemphill v. Moody, 64 Ala. 468 (1879). "But, in civil proceedings, this rule [as to mistake of law], owing to its hardship, has been treated as one stricti juris; and if there was intermixed with the mistake of law, any mistake *258 of fact, courts have willingly seized upon it, and made it the ground of relief." Id. at 473-74. Accordingly, Dr. Sherrill is entitled to the return of the $4,860.61 paid to Morris.