458

## CUNNINGHAM v. BUNKER.
### No. 5892.

Circuit Court of Appeals, Fifth Circuit.
Dec. 9, 1930.

J. Field Wardlaw, of West Palm Beach, Fla. (Wideman, Wideman & Wardlaw, J. Field Wardlaw, and Lucius A. Buck, all of West Palm Beach, Fla., on the brief), for appellant.

R. T. Boozer, of West Palm Beach, Fla., for appellee.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

The appellant, the receiver of the First National Bank of Lake Worth, Fla. (herein referred to as the bank), claimed of the appellee the amount of an overdraft which was created in the way indicated below. At the opening of business on Saturday, March 12, 1927, the balance in the bank to the credit of appellee was $107.49. During the forenoon of that day the appellee deposited in the bank four checks, one for $17,000, drawn on a bank located at Chattanooga, Tenn., and payable to the order of the appellee, and the other three for amounts aggregating $229.97. The appellee then drew a check against her account in the bank for the sum of $6,500 payable to the order of her kinsman, J. E. Bunker, at whose request, when he presented that check for payment, the sum of $6,000 was credited to his account in the bank and $500 to the account of Mrs. Iona Bunker. The cashier of the bank stated in his testimony: "That it was against the rules of the Bank to allow out of town checks to be drawn on until they had been cleared, but that he as cashier was authorized to vary this rule, and that his reason for varying it was that he knew Nellie M. Bunker to be financially responsible, and had known her for a number of years." The above-mentioned check for $17,000 was protested for nonpayment and came to the hands of appellant as part of the assets of the bank. By reason of the nonpayment of the $17,000 check, the condition of the appellee's account with the bank was so changed that, instead of there being a balance to her credit, the account showed that she owed the bank or its receiver $6,293.70. On the above-mentioned date the bank closed its doors for business at noon, its usual Saturday closing time. It did not open on the following Monday, and then was in charge of a National Bank Examiner. The receiver was appointed on April 2, 1927. The appellant's declaration contained the allegation that the bank "became insolvent March 12, 1927." Upon the conclusion of the evidence the appellant moved for a directed verdict in his favor. The court denied that motion. The bill of exceptions recites:

"The Court then of its own motion directed a verdict for the defendant in the following language:

"Gentlemen of the Jury: In this case the action by the Plaintiff is that the bank was insolvent. If the bank was insolvent at the time when those transactions occurred with the bank then the Plaintiff cannot maintain this cause of action, because the bank is an insolvent institution, and had no right to receive this money and the whole transaction was void. In the Declaration in this case the Plaintiff says the bank was insolvent on the 12th day of March, 1927, when this money was deposited, and the transactions took place. That being the fact as being admitted by the Plaintiff in the case and it is a fact in this case, and that being what you are to find by the evidence, and there being no other evidence to the contrary, the Court instructs you in this case to find a verdict for the Defendant."

 It is not material to determine whether the allegation of the declaration that the bank "became insolvent March 12, 1927," was or was not enough to show that the ac-

ceptance of the deposit amounted to a fraud on the appellee. What would have accrued in favor of the appellee as the result of the commission of such a fraud was the right to rescind and stop payment of the deposited checks upon discovering the insolvency of the bank—to reclaim the funds so acquired by the bank. St. Louis & San Francisco Ry. Co. v. Johnston, 133 U. S. 566, 576, 10 S. Ct. 390, 33 L. Ed. 683; Richardson v. New Orleans Debenture Redemption Co. (C. C. A.) 102 F. 780, 52 L. R. A. 67; Richardson v. New Orleans Coffee Co. (C. C. A.) 102 F. 785; 3 R. C. L. 557. No right to reclaim any part of the $17,000 called for by the above-mentioned check could have accrued in favor of the appellee, as, instead of the bank realizing anything from that check, the appellee drew against it before it fruitlessly was presented for payment, with the result that she was enabled to check out $6,293.70 more than the amount to which as a depositor she was entitled. Whether the deposit of that check is regarded as having been made for credit, or for collection, the depositor, who indorsed it, was liable to the bank until actual final payment of it was received by the latter. Compiled General Laws of Florida, 1927 Ann. § 6834. Upon the nonpayment of that check, the credit in the amount of it, entered upon the depositor's account when the deposit was made, was subject to be canceled. The evidence showed that the bank permitted the appellee, known to be a financially responsible customer, to draw against that check before payment of it was refused by the drawee. That was not an unusual occurrence in the banking business. In the event of the nonpayment of a check so drawn against, the depositor is responsible to the bank for the sum so drawn—not by reason of his indorsement, but for money paid for his use or benefit. National Commercial Bank v. Miller & Co., 77 Ala. 168, 54 Am. Rep. 50; 3 R. C. L. 523. Under the court's ruling the insolvency of a bank at the time of a deposit of a check on another bank enables the depositor, if he avails himself of the privilege of drawing against that check before it can be presented for payment, to escape liability to the depository bank for the sum so obtained from it, though that check was wholly uncollectible. This amounts to saying that the insolvency of a bank at the time of the deposit of a check on another bank has the effect of exempting the depositor from liability to the depository bank for an overdraft resulting from that check being drawn against and then turning out to be worthless. The fraud of a bank in accepting a deposit cannot properly be given the effect of enabling a depositor to escape liability for overdrawing his account. It is apparent that, though the bank's acceptance of the deposit of the $17,000 check was fraudulent, the appellee incurred liability to the bank by getting from it $6,293.70 more than, as it turned out, was owing her by the bank. The above-mentioned rulings were erroneous. Because of those errors, the judgment is reversed, and the cause is remanded, with direction that a new trial be granted.

Reversed.