(110 So. 34)

SCOTT et al. v. WILKINSON. (6 Div. 536.)

(Supreme Court of Alabama. June 30, 1926.
Rehearing Denied Nov. 11, 1926.)

1. **Principal and agent** ☞109(5)—**Written authority to agent to use notes, "in collecting these notes as he desires," gave him no power of disposition except on their payment.**

Written authority given to agent to use notes, "in collecting these notes as he desires, by foreclosure or as he sees fit to do," gave him discretion only as to procedure in collecting them and gave him no power of disposition other than cancellation and surrender on their payment.

2. **Estoppel** ☞72—**One invoking maxim that where one of two innocent parties must suffer from act of third party, he primarily causing loss must bear it, must show act of other party in nature of negligence.**

One invoking maxim that where one of two innocent parties must suffer loss from act of third party, he must bear the loss whose conduct primarily caused it, must show act of other party in nature of negligence prompting and rendering feasible the deception practiced on himself.

3. **Estoppel** ☞72—**Maxim that where one of two innocent parties must suffer from act of third, he primarily causing loss must bear it, held inapplicable to indorsees intrusting possession of note for collection to agent who sold it.**

Maxim that where one of two innocent parties must suffer loss from act of third party, he must bear the loss whose conduct primarily caused it, *held* inapplicable to owners of note who intrusted it for collection to agent who sold it.

4. **Bills and notes** ☞327.

Purchaser of negotiable paper in due course is a favorite of the law.

5. **Bills and notes** ☞342.

Purchaser of negotiable paper in due course is chargeable with notice of every fact shown on the face or on the back of the instrument.

6. **Bills and notes** ☞509.

That note was purchased at discount of 12 per cent. may be considered with other circumstances, on question of good faith.

7. **Bills and notes** ☞342—**Purchase of note from purported agent of payee, without inquiry as to canceled indorsement by payee to others, held in bad faith.**

Investment company purchasing note, at substantial discount from purported agent of payee, without inquiry as to canceled indorsement by payee to others, *held* guilty of bad faith.

8. **Alteration of instruments** ☞20.

Cancellation of indorsement on note, by indorsees' agent for collection only, could not destroy indorsees' title.

9. **Bills and notes** ☞206.

Transfer of note by one acting as agent of payee, who was not the owner, could not pass title, in absence of negligence or conduct resulting in equitable estoppel of owners.

Appeal from Circuit Court, Jefferson County; William W. Walker, Judge.

Bill in equity by Hettie Ann Wilkinson, as guardian of Edward L. Wilkinson, non compos mentis, against the Traders' Investment Company, D. A. D. Scott, and S. E. J. Scott, wherein respondents Scott filed a cross-bill against the Traders' Investment Company, and respondent Traders' Investment Company filed a cross-bill against Hettie Ann Wilkinson, as guardian of Edward L. Wilkinson, non compos mentis, and respondents Scott. Decree granting relief to Hettie Ann Wilkinson, as guardian of Edward L. Wilkinson, non compos mentis, and to the Traders' Investment Company, and denying relief to respondents Scott, and the Scotts appeal. Reversed and rendered.

The original bill alleges that Edward L. Wilkinson, before becoming of unsound mind, purchased certain lands from Ida Lee Kelley, paying part cash and giving notes for deferred payments; that, at the time of purchase, it was understood by and between Wilkinson, Kelley, and the Scotts that Kelley owed the Scotts a part of the purchase money for said land, and it was agreed by and between the parties that the cash payment be made to the Scotts in part payment of the purchase money due them, and that said purchase-money notes to be given by Wilkinson would be transferred to the Scotts as full payment of the purchase money for said land—all which was accordingly done; that all of said notes have been paid except one for $750, due April 30, 1923; that the Traders' Investment Company claims to own said note and the mortgage securing same and has begun foreclosure proceedings under said mortgage; that the Scotts claim that they still own said note and mortgage and insist that they have never authorized any one to sell, transfer, or dispose of same, and they have placed their claim in the hands of an attorney for collection. Complainant brings the amount due on said note into court and pays same over to the register of the court, alleging her ability and willingness to pay any additional amount that might be ascertained to be due, and praying that the defendants be required to interplead and settle to whom of right the sum belongs. It was also prayed that the Traders' Investment Company be enjoined from proceeding with the foreclosure of the mortgage securing the note in question, which injunction was granted.

The respondents Scott filed answer and cross-bill, setting up exclusive right and title to the note and mortgage in themselves, and making the respondent Traders' Investment Company respondent to their cross-bill.

Respondent Traders' Investment Company

filed amended answer and cross-bill making the original complainant and respondents Scott respondents to the cross-bill, alleging that November 8, 1922, W. E. Kelley offered for sale to it the note and mortgage in suit; that said Kelley had in his possession and produced the note and mortgage and a power of attorney purporting to have been executed by Ida Lee Kelley, granting to him the right and authority to transfer said note and mortgage; and that said W. E. Kelley did on said date sell and deliver said note and mortgage for a valuable consideration to this cross-complainant, who had no notice that same belonged to the Scotts. It is averred by this cross-bill that said W. E. Kelley was also the agent of the Scotts; that said Scotts delivered said note and another note into the possession of Kelley, giving him the indicia of ownership, and giving him power to make sale and delivery thereof.

The trial court, by its decree, granted relief to the original complainant and to the respondent (cross-complainant) Traders' Investment Company, and denied relief to respondents (cross-complainants) Scott. These latter respondents appeal.

Samuel Wilder, of Birmingham, for appellants.

One who deals with an agent is bound to ascertain the nature and extent of his authority. 3 Brickell's Dig. 22; Bank of Menlo v. Arnold & Co., 13 Ala. App. 462, 68 So. 699. An agent can bind his principal only to the extent of his authority. Lytle & Co. v. Bank of Dothan, 121 Ala. 215, 26 So. 6. An agent to collect or receive payment cannot bind his principal by a sale of the claim. 2 C. J. 635; Rigby v. Lowe, 125 Cal. 613, 58 P. 153. The note was specially indorsed to the Scotts, and in order to make it negotiable it was necessary that they should indorse it. Code 1923, § 9060. Appellee investment company is not a holder in due course. Code 1923, § 9078.

Arthur L. Brown, of Birmingham, for appellee.

The note was negotiable, and delivery before maturity passed title. Blackman v. Lehman, Durr & Co., 63 Ala. 550, 35 Am. Rep. 57. Appellants cannot complain of the sale to appellee, since they armed their agent with indicia of title, and clothed him with apparent authority to dispose of same. Davidson v. Farrow Mer. Co., 13 Ala. App. 614, 68 So. 602. Where one of two innocent parties must suffer by a fraud perpetrated by another, the law imposes the loss upon the party who enabled the fraud to be committed by his misplaced confidence. J. R. Watkins Co. v. Hargett, 209 Ala. 165, 95 So. 811; Dinsmore v. Cooper, 212 Ala. 485, 103 So. 460.

SOMERVILLE, J. It appears without dispute that the appellants, the Scotts, acquired a perfect title to the note in controversy by special indorsement of the payee plainly written on the instrument. The only question presented for review is the decision of the trial court on the evidence, adjudging that the title of the Scotts, as indorsers, was defeated by the act of their agent, Kelley, in selling and indorsing the note to the appellee, the Traders' Investment Company.

In support of the judgment, appellee urges four propositions: (1) That Kelley had written authority from the Scotts to dispose of the note as he saw fit, including the power to sell it even at a substantial discount.

(2) That, in any event, Kelley had verbal authority from the Scotts to do so.

(3) That even though Kelley had no such authority, appellee's title to the note should nevertheless be protected against the claim of the Scotts, because they were at fault in arming Kelley with an indicium of ownership —possession of the note—by means of which he was able to deceive appellee as to his right to sell it.

(4) That appellee was a purchaser for value in due course of a negotiable instrument.

[1] 1. An examination of the terms of the written authority given to Kelley to collect the note shows clearly that he had no authority beyond the mere collection of the notes. The stipulation that the notes were "to be used by W. E. Kelley in collecting these notes as he desires, by foreclosure or as he sees fit to do," armed him with a discretion only as to his mode of procedure in effecting the intended collection, but certainly not with any power of disposition other than the cancellation and surrender of the notes when paid.

2. The verbal authority, claimed by Kelley to sell the notes to raise money for his own use, rests upon the unsupported testimony of Kelley himself. Apart from its intrinsic improbability, it is specifically denied by the Scotts. Moreover, our reading of the record, and especially of Kelley's own testimony, utterly discredits his veracity and renders it unacceptable as a basis for any conclusion of fact. Our conclusion is that Kelley was without authority, verbal or written, to sell the notes.

[2] 3. To render available the maxim that, where one of two innocent parties must suffer loss from the act of a third party, he must bear the loss whose conduct has primarily caused it, the party invoking the principle must show that the other party has done or omitted some act in the nature of negligence which prompted and rendered feasible the deception practiced upon himself. Citizens' Bank v. Commercial Bank, 209 Ala. 280, 96 So. 324.

[3] That maxim can have no application to a case like this. Here the Scotts did no more

than intrust the possession of the note to Kelley, with authority to collect it and with implied authority, of course, to cancel and surrender it when paid. It carried on its face the plain evidence of its ownership; viz., the special indorsement of the payee to the Scotts. Except by a fraudulent alteration, sweeping and apparent, the agent could not use the notes as the property of any one but the indorsees; and the act of the indorsees in giving the mere possession of the notes to Kelley was in no sense negligent or culpable, nor was it promotive of Kelley's fraudulent deception of the appellee in any legal sense.

[4-8] 4. The purchaser of negotiable paper in due course is a favorite of the law, but he is nevertheless chargeable with notice of every fact shown upon the face or the back of the instrument. The note here in question showed that it had been indorsed by the payee to the Scotts. It was not in the custody of the payee. It was offered to appellee at a discount of about 12 per cent. of its face value, although it was known to be far less than one-third of the purchase money for the land and was secured by a mortgage on the land itself. Appellee's officers, who were representing it in this transaction, made no inquiry whatever as to the presence of the indorsement on the note—why it was placed there, why it was canceled by crosslines and by whom, or who and where the indorsees were. Presumably, the payee and indorser, Ida Kelley, would have given information warning appellee of the true ownership of the note had it been asked for in connection with the power of attorney required of her. Our clear conviction is that appellee was guilty of flagrant negligence, which compels the conclusion of bad faith, in the purchase of the note. We do not mean to hold that the mere fact of buying the note at a substantial discount would alone be sufficient to show bad faith, but, in connection with the other circumstances of the case, it is a factor to be considered in aggravation of that conclusion. Spires v. Jones, 212 Ala. 117, 119, 101 So. 753.

[9] The fraudulent act of appellants' agent, Kelley—in legal effect, a forgery—could not destroy their title; and his transfer of the note to appellee, acting as agent for the payee, who was not the owner, could not pass the title, in the absence of negligence on the part of appellants or of some conduct resulting in their equitable estoppel to assert their title as against appellee. Nothing of that nature appearing, we are constrained to hold that appellants are the owners of the note and are entitled to its proceeds.

The decree of the trial court will be reversed, and a decree will be here rendered to that effect, ordering the register of the circuit court to pay to appellants the sum of $825, being all of the fund paid into court by the original complainant in satisfaction of the note in suit.

It is further ordered and decreed that the original complainant is entitled to the relief prayed; and that the respondent, the Traders' Investment Company, shall deliver up to the register the Wilkinson mortgage transferred to it by Kelley, to be indorsed "satisfied" by the register and delivered by him to said complainant; and, further, that the register shall appropriately indorse upon the margin of the record of said mortgage the fact of its payment and satisfaction.

Reversed and rendered.

ANDERSON, C. J., and THOMAS and BOULDIN, JJ., concur.