223 So.2d 273

**TRI–D ACCEPTANCE CORPORATION**

**v.**

**Theodis SCRUGGS et al.**

**8 Div. 300.**

Supreme Court of Alabama.

May 8, 1969.

Norman W. Harris and Julian Harris, Decatur, for appellant.

Jas. P. Miller and Thos. C. Pettus, Moulton, for appellees.

HARWOOD, Justice.

This is an appeal from a decree enjoining Tri-D Acceptance Corporation from foreclosing a mortgage given by Theodis Scruggs, Floyd Scruggs, and Carl Scruggs to Morris Bros. Construction Company, which company assigned the mortgage and note secured thereby to Tri-D Acceptance Corporation.

The only question involved in this review is whether Tri-D Acceptance Corporation was a bona fide purchaser in due course of the note and mortgage.

The land covered by the mortgage, some 19 acres in extent, was originally jointly owned by Theodis Scruggs and his wife Anne. The wife died in 1963, and her undivided one-half interest vested in her seven children, subject to the curtesy rights

in her husband Theodis. Among these seven children were Carl Scruggs and Floyd Scruggs who signed the note and mortgage jointly with their father Theodis. Floyd died in 1967 pending this suit, and administrators ad litem were appointed to represent his interest.

The court found that Carl Scruggs was a minor at the time he executed the mortgage, and has never ratified or confirmed the same, and that the mortgage and note were void as to Carl Scruggs, and therefore only the interests of Theodis and Floyd Scruggs in the land were involved.

The evidence tends to show that Theodis had built a 24 by 28 foot four room house on the land in question. In 1961, he and his wife had secured a loan from the Security Mutual Finance Corporation which was secured by a mortgage on the 19 acres. At the time of his dealings with Morris Bros. Construction Company, a balance of $832.00 was due on the Mutual Finance mortgage.

Theodis Scruggs testified that in the fall or winter of 1963, he was contacted by a representative of Morris Bros. Construction Company relative to making repairs on his house. The repairs and improvements were to consist of:

1. A metal tin roof guaranteed for ten years.

2. Insulated green siding on outside walls.

3. Underpinning the house all around.

4. Build porches across the front and rear of house.

5. Install two doors, and two screen doors.

6. Install new windows where needed.

7. Furnish sufficient sheet rock and paint for inside walls of house. (This work to be done by Theodis.)

8. Paint outside trim on house.

A contract was presented to Theodis and he, Floyd, and Carl signed the same. The contract called for the payment of $1976.00 for the work and materials

To secure payment of this contract price, Morris Bros. Construction Company secured a mortgage on the 19 acres, signed by Theodis, Floyd, and Carl Scruggs. There was to be included in the mortgage the sum of $832.00, the balance due on the Mutual Finance mortgage. The mortgage and note, however, were written for $4487.00.

Theodis testified that the mortgage was supposed to be on one acre of the 19, and in an amount less than that appearing in the mortgage. He can read, but did not read the mortgage and note but only glanced at them before signing each.

Only a small part of the repairs and improvements called for under the contract with Morris Bros. Construction were completed, or done according to the contract. We see no need to detail these deficiencies. The lower court found the value of the work done and materials furnished to be $376.00, and this finding is sufficiently supported by the evidence.

There is much testimony by Theodis and his witnesses pertaining to the validity of the mortgage. Theodis testified he did not read the mortgage, as he understood it was to secure the cost of the repairs, and the balance due on the Mutual Finance mortgage. The matter before us is whether Tri-D purchased the mortgage and note with notice of the failure of consideration for the mortgage, i. e., the failure to carry out the contract for repairs and improvements.

In this connection Morley Denbo, Vice President of Tri-D Acceptance Corporation, testified that J. W. Morris of Morris Bros. Construction Company approached him in reference to Tri-D Acceptance Corporation purchasing a note and mortgage to be given by Theodis Scruggs and others to secure payment of a contract to repair and improve Theodis' house. After Morris

told him of the work to be done, he named an approximate figure Tri-D would pay for the debt. He then drove to Theodis' house with Morris and viewed it from the road. Thereafter, he had an attorney investigate the title, and was informed that Theodis had a half interest in the property, with a right of curtesy in the remaining half which was owned, subject to Theodis' right of curtesy, by the seven children of Theodis' deceased wife, their mother.

Denbo testified he viewed the property to determine whether to "buy the debt." He felt the property would be worth just as much without the house as with it.

A few days later, Morris presented the mortgage in question, and note to Denbo for purchase.

The mortgage and note were in the amount of $4487.00, payable in six equal annual installments. Morris also had a certificate of completion signed by Theodis, Floyd, and Carl Scruggs, but not executed by Morris Bros. Construction Company.

Theodis testified that the certificate of completion was signed by him before the work was completed.

Denbo and Morris again rode to the Scruggs' house and viewed it from the road. They did not leave Morris' automobile. Denbo testified that the repairs and improvements appeared to have been completed from this view.

In this connection, we note that Denbo on direct examination testified he had no knowledge of the terms of the agreement between Theodis and Morris Bros. Construction Company, though earlier in his direct examination he had testified that he had told Morris what Tri-D would pay for Theodis' "debt" after Morris told him of the work to be done.

On cross examination Denbo further testified that he took this second view of the house in order to determine whether Morris Bros. Construction Company or anyone else had completed the repairs and improvements on the house. Being asked if he inquired of Morris Bros. as to the work they were supposed to do, Denbo replied that he had, and as to what he was told replied:

"Well, I can't remember the exact words, but I do know it was an exterior job with porches, but with the complete details of what he verbally told me three years ago, I would not say. But substantially, everything that he said in the exterior was done. I mean I couldn't tell that anything he had said that he was going to do was not done, I did not go in the man's house."

He further testified that he did not remember whether Morris had told him that materials were to be furnished for work in the interior of the house.

Although Denbo stated he had been engaged in appraising houses for seventeen years, he could not, or would not, give an opinion as to the value of the work, or any part thereof, done on the house.

Denbo never contacted any of the Scruggses to determine whether the work on the house had actually been done as provided in the contract.

Denbo testified that Morris Bros. Construction Company was paid $2000.00 for the note and mortgage by Tri-D and that Tri-D had paid Mutual Finance $832.00, the balance due on Mutual Finance's mortgage. Tri-D had also paid $100.00 to the attorney for examining the title, and another $100.00 for fire insurance, a total outlay of $3032.00.

The Mutual Finance mortgage was sent to Tri-D after payment of the balance due on it. Although this balance was, according to Denbo, included in the Scruggs mortgage as part of the debt secured by the Scruggs mortgage, the Mutual Finance mortgage was never given to the Scruggses nor was it ever marked satisfied.

The Chancellor found that Tri-D Acceptance Corporation prior to purchasing the

mortgage and note had notice, or knowledge of facts which if properly pursued would have furnished actual knowledge that Morris Bros. Construction Company had not performed its contract with the Scruggs.

The complainants below having offered to do equity, the Chancellor ordered and decreed that Theodis Scruggs and the estate of Floyd Scruggs, deceased, be allowed thirty days from the date of the decree to pay to the Register the sum of $1510.00 for the payment of $376.00 to Tri-D for the value of the services performed by Morris Bros. Construction Company, and the sum of $832.00 paid for the Mutual Finance mortgage, both sums to carry interest at 6% per annum from 21 November 1963. Upon payment of the $1510.00 to the Register, that official was ordered to mark the Morris Bros. and the Mutual Finance mortgages paid as of record.

Tri-D Acceptance Corporation has perfected an appeal from said decree.

■ As stated in Cotton v. John Deere Plow Co., 246 Ala. 36, 18 So.2d 727:

"The indorsee, for value before maturity, of a negotiable promissory note is protected as a holder in due course from the defense of breach of executory warranty unless at the time he acquired the note the condition had then been breached and he had knowledge thereof or was possessed of facts sufficient to impute knowledge, or unless he had 'knowledge of such facts that his action in taking the instrument amounted to bad faith.' Snell Nat. Bank of Winter Haven v. Janney, 219 Ala. 396, 122 So. 362, 364; Code of 1940, Title 39, sec. 58."

■ It was Denbo's contention that, as agent for Tri-D, he relied upon Morris' statement that the contract for the work on the Scruggs house had been completed, and that he placed further reliance upon the certificate of completion signed by the mortgagor. This certificate was undated, and was never signed by Morris Bros. Despite this asserted reliance, Denbo and Morris rode out and viewed the house. Apparently this inspection consisted of a casual view of the house from the roadway. At no time did Denbo contact the Scruggses in reference to the work on the house.

Denbo's testimony is self-contradictory as to whether he knew the terms of the contract between Morris Bros. Construction Company and the Scruggs.

Although Denbo testified that for seventeen years his business had been to inspect and evaluate houses, he declined repeatedly to give an opinion as to the value of the work done on the Scruggs house, or the value of any part of the work done. Theodis testified the underpinning even in front of the house had an uncompleted space. A porch was to have been built across the entire rear of the house. Instead, only a small stoop was built.

In the assignment of the mortgage and note to Tri-D, Morris Bros. Construction Company covenanted that $4487.00 was due and unpaid on the Scruggs debt. Denbo admitted that from his inspection of the house, after Morris had represented to him that the work had been completed, he could see that no improvements had been made on the house in this amount.

Further, when asked if the work had been completed despite the completion certificate, Denbo replied, "How do I know, sir."

Under the self-contradictory, and equivocal, testimony of Denbo alone, the Chancellor as trier of fact, was amply justified in concluding that Tri-D, through its agent Denbo, had knowledge, or had possession of facts sufficient to impute knowledge, at the time Tri-D purchased the note and mortgage, of infirmities and defects in the note secured by the mortgage, and therefore was not a purchaser in good faith.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.