229 So.2d 495

UNITED STATES FINANCE COMPANY, Inc.

v.

Evelyn JONES.

1 Div. 590.

Supreme Court of Alabama.

Dec. 11, 1969.

Mayer W. Perloff, Mobile, for appellant.

No attorney on appeal.

MERRILL, Justice.

This appeal is from a decree setting aside a mortgage given by appellee to one Bell and assigned by him to appellant, United States Finance Company, Inc. Bell does not appeal.

Appellee filed her bill of complaint to quiet title against William E. Bell, d/b/a The Bell Company, and the appellant Finance Company. An answer and cross bill was filed by the appellant which, in substance, stated its claim to the property was that it was the assignee of a mortgage from William E. Bell, which mortgage and assignment was recorded in the Probate Court of Baldwin County, Alabama, and in the cross bill it alleged the execution and assignment of the said mortgage and further that the mortgage was in default and prayed that the mortgage be foreclosed. To the cross bill the appellee filed an answer which, in essence, claimed that the appellant was not a bona fide purchaser for value without notice. This answer was filed on February 7, 1969, and another answer was subsequently filed by the appellee on February 20, 1969, which answer complains that William E. Bell did not do the things to the property which he had agreed to do at the time of the execution of the mortgage. A decree pro confesso was entered by the court against William E. Bell for failure to answer the bill of complaint.

The case was tried on January 24, 1969, and the court entered a final decree granting relief to the appellee-complainant.

The trial court made the following findings of fact:

"1. The allegations in the Complainant's Bill of Complaint are true.

"2. William E. Bell obtained a mortgage on said property by fraudulent means.

"3. The signature of Willie Jones to this mortgage was a forgery; that Willie Jones was dead on the date this mortgage was executed.

"4. The acknowledgment on said mortgage was defective; that it is shown to have been taken in Baldwin County by a Mobile County Notary.

"5. The United States Finance Company had purchased a great number of mortgages from William E. Bell covering land in Baldwin County some of which were defective, and the Court finds that United States Finance Company was not an innocent purchaser for value without notice."

The evidence tended to show that two salesmen from The Bell Company (hereinafter Bell), a Florida contracting company, visited appellee, an uneducated black woman and a widow, one night at her house in Baldwin County. They offered to perform certain repairs on her house. They persuaded appellee to sign a mortgage on her house and land securing a note providing for payments of $30.66 per month for 84 months ($2,575.44). Appellee could only read and write "a little bit." Three days later, Bell sold the note and mortgage to U. S. Finance.

The evidence was undisputed that Bell agreed to work on a back room of appellee's house, put aluminum siding on the outside and put a new roof on the top. It

is also undisputed that Bell put tar paper on the sides of the house instead of aluminum, then sprayed it with aluminum paint, and did not adequately perform the work on the back room or roof. It is also undisputed that more harm than good was done to the house by Bell.

The undisputed evidence shows that Bell did not perform as he contracted to do, and did not provide adequate consideration under the contract, note and mortgage. It is also undisputed that the mortgage was executed in Baldwin County. The signature on the mortgage of Willie Jones was an obvious forgery. The acknowledgment of the notary on the mortgage shows that it was taken by Zack Watkins, a Notary Public of Mobile County, in Baldwin County where he had no authority under his affixed seal. He also certified "that Evelyn Jones and Willie Jones whose name is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day that, being informed of the contents of this conveyance, she executed the same voluntarily on the day the same bears date." He could not possibly have seen Willie Jones that day or could he have been known to him as a person signing the mortgage.

The note, secured by the mortgage here involved, is not in the record, but is described in the mortgage. When a mortgage securing a note is transferred along with the note, the mortgage follows and is of the same character as the note. Birmingham Trust & Savings Co. v. Howell, 202 Ala. 39, 79 So. 377; Davies v. Simpson, 201 Ala. 616, 79 So. 48.

The main question is whether appellant was a holder in due course. The Uniform Commercial Code, Tit. 7A, §§ 1–101 through 10–104, applied to this transaction since it became effective midnight December 31, 1966, and the note was signed on January 23, 1967. Section 3–302(1) provides, in part, that:

"A holder in due course is a holder who takes the instrument

\* \* \* \* \* \*

"(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."

Section 1–201(25) defines notice as follows:

"A person has 'notice' of a fact when

"(a) he has actual knowledge of it; or

\* \* \* \* \* \*

"(c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists.

"A person 'knows' or has 'knowledge' of a fact when he has actual knowledge of it. \* \* \*"

Appellant's first witness, Bill Patterson, credit manager for appellant when the Jones transaction was handled, testified that appellant purchased the paper from Bell on February 2, 1967 for $1,360.00; that "in order for us to purchase the contract and mortgage from any of these contractors they did have to tell me the work was completed and satisfactory"; that he called appellee on the day the work was completed and she said it was satisfactory, but he did not deny her previous testimony that she told him that it had not rained and was satisfactory but later it leaked when it rained; that he "bought the mortgage, acting on her word."

But he also testified that he examined the mortgage before purchasing it, and the discrepancy as to the signing in Baldwin County before a Mobile County Notary "must have been" on the mortgage when he bought it, and that the assignment of the mortgage bore the date of January 26, 1967, but that he bought it on February 2, 1967.

Later in Patterson's cross-examination, the following took place:

"Q. Did you notice the mortgage and certificate of completion is dated the same date?

"A. They are.

"Q. They are the same date?

"A. They are.

"Q. That didn't make you suspicious about buying it?

"A. No sir, that was normal.

"Q. With William E. Bell it is normal?—that is not normal with your transactions with other people?

"A. With other contractors, yes sir."

This testimony smacks of bad faith on the part of appellant. Repairing houses, covering them with siding, re-roofing, and paneling rooms requires the assembling of materials and usually several days work for the amount of work and the cost on the project here involved. But from the testimony, it seems that appellant gets the mortgage executed, and requires a certificate of completion and satisfaction to be signed at the same time, or at least, on the same day. It apparently wants to guarantee, in writing, its status as a holder in due course whether or not the work is ever completed. Yet, appellant's testimony was that this procedure was "normal" not only with Bell but with other contractors.

There was testimony that the mortgage record in the Probate Office of Baldwin County showed many assignments from Bell to appellant as shown by these questions and answers from a practicing attorney in that county:

"Q. Have you had occasion to run the indexes in the Probate Judge's Office to determine how many mortgages in Baldwin County Mr. William E. Bell has?

"A. Not for that purpose, but I have had occasion to run the record out of William E. Bell to United States Finance Company."

"Q. Would you say there are a multitude of assignments?

"A. Yes sir I would say in the vernacular a myriad."

It taxes credulity to accept the contention that appellant did not have notice of Bell's fraud and manner of dealing with people from his many transactions with appellant.

There is also the matter of the price paid by appellant for the mortgage. It was executed on January 23, 1967, assigned in writing to appellant on January 26, filed for record on February 1, and "purchased" by appellant on February 2, 1967 for $1,-360.00, about fifty per cent of the face value of the mortgage.

The mere fact that a note is purchased for an amount less than its face, or that an unusually large discount is accepted, is never of itself sufficient to charge the purchaser with notice of existing equities, unless the consideration is merely nominal. However, inadequacy is always a fact to be considered by the jury as evidence of bad faith, and may, with suspicious circumstances, authorize a finding of bad faith, especially if the consideration is grossly inadequate. Spires v. Jones, 212 Ala. 117, 101 So. 753; Scott v. Wilkinson, 215 Ala. 235, 110 So. 34. Certainly the trial court was entitled to consider the fact of inadequacy along with the other peculiar circumstances of this case.

In Tri-D Acceptance Corporation v. Scruggs, 284 Ala. 153, 223 So.2d 273, we said:

"The indorsee, for value before maturity, of a negotiable promissory note is protected as a holder in due course from the defense of breach of executory warranty unless at the time he acquired the note the condition had then been breached and he had knowledge thereof or was possessed of facts sufficient to impute knowledge, or unless he had 'knowledge of such facts that his action in taking the instrument amounted to bad faith.' Snell Nat. Bank of Winter

Haven v. Janney, 219 Ala. 396, 122 So. 362, 364; Code of 1940, Title 39, sec. 58."

In the instant case, as in *Tri-D*, we think the trial court was justified from the evidence (all of which we have not delineated) in holding that appellant was not a holder in due course, since it, through its agents, servants or employees had knowledge, or had possession of knowledge of facts sufficient to impute knowledge, at the time appellant purchased the mortgage, of its infirmities, defects, and defenses thereto, and was not a purchaser in good faith.

Affirmed.

LIVINGSTON, C. J., and LAWSON, HARWOOD and MADDOX, JJ., concur.