235 So.2d 791

**UNITED STATES FINANCE COMPANY, Inc., a Corp.**

**v.**

**Richard PAGE and Janie Bell Page.**

**I Div. 589.**

Supreme Court of Alabama.

May 28, 1970.

Mayer W. Perloff, Mobile, for appellant.

Wilters, Brantley & Nesbit, Bay Minette, for appellees.

HARWOOD, Justice.

Janie Bell Page and Richard Page entered into a written contract with The Bell Company, operated by one W. E. Bell, for certain repairs to be made on their modest home in Baldwin County, Alabama. This agreement is dated 20 May 1966.

The contract specified the repairs and improvements were to be made for a principal balance of $3124.00, with a time differential of $2185.64, or a total of $5309.64. The agreement called for payments of $63.21 per month for 84 months. The time these payments were to begin is not set forth.

Bell sent some material to the Page home, and two men, one named Blakely, worked there part of the day for about a week. The result of their efforts in allegedly improving the Page house can best be described as disastrous. We see no need to describe these counterfeit efforts.

On the day this agreement was entered into, the Pages purportedly executed a note and mortgage to William E. Bell securing an alleged indebtedness "equal to Sixty-three and 21⁄100 Dollars (63.21) for eighty-four (84) months as evidenced by a promissory note of even date herewith." The note does not appear in the record.

The mortgage was signed by Janie B. Page, and Richard's signature was by mark, he being unable to read or write. The names of E. D. O'Connor and L. E. Mix appear as witnesses.

The mortgage also purports to bear an acknowledgment executed by Ben F. Filligan, a Notary Public of Escambia County, Florida. Filligan certifies that Richard Page and Janie Bell Page, husband and wife, who are known to him, appeared before him and acknowledged their voluntary signatures to the instrument on 20 May 1966.

Both Janie Bell and Richard testified they had never signed or acknowledged any papers in Escambia County, Florida, but on the other hand, all papers they had signed had been signed in their home in Baldwin County, Alabama.

On 11 June 1966, William E. Bell assigned and conveyed the mortgage to United States Finance Company, Inc., for the sum of $10.00 "and other valuable considerations." Other evidence shows that United Finance paid Bell $2,895.00 for the mortgage.

The Pages made payments totaling $795.-31 on the mortgage when, because of the miserable state of the work done, and after consultation with a lawyer, they discontinued payments. United States Finance then instituted steps to foreclose the mortgage.

The Pages filed a bill to enjoin United States Finance and Bell from proceeding with the foreclosure and to have the court declare that the mortgage was procured by fraud, and that United Finance was not a bona fide purchaser in due course of the mortgage.

The court issued a fiat enjoining the foreclosure of the mortgage, and in due time the matter came on for hearing, the respondent United States Finance Company having filed its answer. Bell filed no appearance.

At the hearing, Janie Bell and Richard testified as to the nature of the work and "improvements" made to the house, and the facts concerning their signing the mortgage and certificate of completion.

G. L. Faircloth, a carpenter and brick mason, testified for the Pages. He had inspected the Page house after Bell had ceased work thereon. He estimated that the materials used in doing the work were worth $400.00, but the manner in which they had been applied had not in any manner enhanced the value of the house, and in fact the value of the house was less after the work had been done than before.

Several photographs showing parts of the "repair" work and "improvements" made on the house were received in evidence. They graphically show the botched nature of the work.

O. L. Williamson, the only witness presented by United Finance, testified that he was office manager for the company, and as such was familiar with its accounts, and in particular was familiar with the account of Richard and Janie Bell Page. He testified the Page note was in arrears.

He first learned of the complaint about the work on the house when he received a letter from Mr. Stone, an attorney, in April or May of 1967.

A certificate of completion of work by Bell accompanied the mortgage when his company bought the same on 11 June 1966.

This certificate of completion was received in evidence and reads as follows:

"This job is completed to our satisfaction

　　　　　　x  Richard Page  x
　　　　　　x  Janie B. Page　　"

On the reverse side appears:

"I swear that all labor & Materials are paid in connection with the Richard Page Job.

　　　　　　　　(can't read)"

Janie Bell testified that she had been sick and had come from a doctor's office when Mr. Blakely, who was one of the men working on the house, came to her house and told her "my boys need some money for tonight" and instructed her to sign the certificate of completion which had already been written out. She signed her name and Richard's thereto.

It is significant that the certificate of completion is undated. Since it was procured by Blakely, a reasonable inference is that the certificate was secured during the progress of the work.

Although on his direct examination Williamson had testified he was familiar with the accounts of United Finance, on cross-examination he disclaimed any knowledge as to how many Baldwin County mortgages his company had bought from Bell between 1964 and 1967, and had "no idea" as to whether this number could have been 100, and in fact he did not know how many mortgages his company had bought from Bell.

He would not say whether his company had not received some 30 complaints in connection with the Bell mortgages, and did not know as a matter of fact that he had received about ten complaints from Mr. Brantley, attorney for the appellees.

In buying the Baldwin County mortgages, his company had never examined the nature of the work done by Bell on the houses, and no attorney was ever consulted as to the validity of the mortgages.

Upon completion of the hearing, the Chancellor entered a decree finding that there was a failure of consideration for the Page mortgage and that the same was procured by fraud, and that the United Finance Company was not a holder in due course without notice. The Chancellor decreed that the mortgage to Bell, and its assignment to United Finance be set aside, and canceled, and held for naught, and that a copy of the decree be filed in the office of the Probate Judge of Baldwin County.

While the mortgage shows it was made in Baldwin County, Alabama, and bore the signatures of two witnesses, it was also acknowledged before a notary in Florida. This in itself should have aroused suspicion as to the validity of the mortgage. The mortgage and note were purchased for an amount far below its face value. While the fact that a note is purchased at a large discount is not of itself sufficient to charge the purchaser with notice of existing equities, nevertheless inadequacy of the purchase price is always a matter to be considered by the trier of fact as evidence of bad faith, and may, with

**648**

suspicious circumstances, authorize a finding of bad faith. United States Finance Co., Inc. v. Jones, 285 Ala. 105, 229 So.2d 495.

 It is our conclusion that under the totality of the facts presented, all of which we have not set out, the Chancellor was justified in concluding that United States Finance Company, Inc., had knowledge, or was possessed of facts, sufficient to impute such knowledge, that their action in purchasing the Bell mortgage was questionable as to good faith. Tri-D Acceptance Corp. v. Scruggs, 284 Ala. 153, 223 So.2d 273, and see in particular, United States Finance Co., Inc. v. Jones, 285 Ala. 105, 229 So.2d 495.

Affirmed.

LIVINGSTON, C. J., and LAWSON, MERRILL and MADDOX, JJ., concur.