Carolina E. HIDALGO, a feme sole, Appellant,

v.

SURETY SAVINGS AND LOAN ASSOCIATION, a corporation, Appellee.

No. 6345.

Court of Civil Appeals of Texas, El Paso.

Oct. 31, 1973.

W. W. Heath, to Chairman of the Board of Insurance Commissioners.

Armendariz & Armendariz, Albert Armendariz, Sr., Albert Armendariz, Jr., El Paso, for appellant.

Arturo R. Aguirre, El Paso, Texas, for appellee.

## OPINION

OSBORN, Justice.

This is a suit for summary judgment on a promissory note and for foreclosure of a lien given to secure payment. On two prior occasions, the Supreme Court has remanded the case to the trial Court. Hidalgo v. Surety Savings and Loan Association, 462 S.W.2d 540, reversing 457 S.W.2d 341; and 487 S.W.2d 702, reversing 481 S.W.2d 208. The Association has again obtained a summary judgment and again Mrs. Hidalgo has appealed. The judgment of the trial Court is reversed and the case remanded.

As shown by the prior opinions, Mrs. Hidalgo, on June 13, 1967, executed and delivered her installment note and lien instrument to Western States Improvement Co., Inc. These instruments were assigned to the Association approximately two weeks later. Mrs. Hidalgo made monthly payments totaling $720.00 and then defaulted, and this suit resulted.

The motion for summary judgment is supported by an affidavit of Richard T. Dempsey, Vice-President of the Association, dated July 16, 1973. Attached thereto is a certified copy of the note of the Appellant, dated June 13, 1967, for the face amount of $3,283.20, and made payable to Western States Improvement Co., Inc., and a certified copy of an instrument, entitled, "Contract for Labor and Materials and Trust Deed," bearing the same date as the note. Also attached to the affidavit is a completion certificate, signed by the Appellant, bearing the date of June 27, 1967. There is no endorsement of the note or assignment of the contract in the record before us, but the affidavit recites such endorsement and assignment occurred on June 27, 1967.

The most recent affidavit would appear to eliminate the conclusions which brought about the last reversal of this case. Mr. Dempsey recites that the Association actually paid $2,585.20 to Western States and that the note was endorsed and the contract assigned to the Association. He also states that the completion certificate was not a requirement for the Association's purchase of the note, but was obtained to establish that the services were performed. The affidavit further states that the Association is the legal owner and holder of the note, and an amendment to the affidavit recites that on the date suit was originally filed the claim of the Association was just, true and owed, and all credits had been allowed. (Subsequent to the granting of the first summary judgment, which was appealed but not superseded, there was a foreclosure sale and the property sold at a Sheriff's Sale.)

The Appellant by her third amended answer and counter-claim alleged that Appellee was not a holder in due course and then asserted both personal and real de-

fenses to the note and sought actual and exemplary damages for loss of her home. She also filed a controverting affidavit in which she set forth that the work on her home was to be done for $2,000.00 with $500.00 paid to her by the contractor. She also stated that the outside of the house was completely ruined by the work which Western States performed.

■ At the outset, we are faced with the issue of whether there is an appealable judgment since the summary judgment appealed from does not mention nor purport to determine the issues raised by Appellant's counter-claim.

In North East Independent School District v. Aldridge, 400 S.W.2d 893 (Tex. 1966), Chief Justice Calvert wrote:

> "When a judgment, not intrinsically interlocutory in character, is rendered and entered in a case regularly set for a conventional trial on the merits, no order for a separate trial of issues having been entered pursuant to Rule 174, Texas Rules of Civil Procedure, it will be presumed for appeal purposes that the Court intended to, and did, dispose of all parties legally before it and of all issues made by the pleadings between such parties."

While we would not normally consider disposition by summary judgment as being "a case regularly set for a conventional trial on the merits," the Aldridge Case was a summary judgment case, and when the Supreme Court disposed of this case the first time, it recognized the existence of a pending cross-action. Thus we conclude that the summary judgment for the Appellee by implication denied the Appellant's counter-claim and is therefore a final, appealable judgment.

■ The Appellant's first point of error claims that since the Appellee recovered all sums claimed to be due in the foreclosure sale under the first summary judgment granted herein, it was entitled to no further relief, the note was discharged, and the case should have been dismissed. Counsel for Appellee acknowledged in oral argument that the house was bid in at the sale for the exact amount owing on the debt. This issue was before the Court in Brinegar v. Henderson Hardware Co., 95 S.W.2d 740 (Tex.Civ.App.—Austin 1936, no writ), and decided adversely to the contention of the Appellant herein. Only upon obtaining a favorable judgment on its suit on the note and granting foreclosure of its lien, may Appellee effectively cut off the claims against it for wrongful foreclosure. Certainly, it is entitled to a final determination of those issues even though it has obtained the full amount sought in its original suit. The first point is overruled.

■ It is next contended that the trial Court erred in failing to grant the Appellant's motion to dismiss the motion for summary judgment, particularly since the same grounds for the motion for summary judgment had been previously urged upon the trial Court, and in each instance the case reversed. Basically, the complaint is that a party should not have to continually contest a different motion for summary judgment and that the case should be ordered tried on its merits. The facts in this case reflect that suit was filed on August 7, 1969. The first summary judgment was reversed by the Supreme Court on February 3, 1971. The second summary judgment was reversed by the Supreme Court on October 11, 1972. A third amended motion for summary judgment was filed on January 10, 1973, and granted on March 16, 1973, and then set aside upon the admitted error and request by the Appellee. A fourth amended motion for summary judgment was filed on April 16, 1973, and granted on May 18, 1973. Now the case is four years old, perhaps again headed for the Supreme Court, and Appellant has yet to have a trial on the merits or any determination of her cross-action other than to have it overruled by implication.

Texas has not adopted any rule placing a limitation on the number of summary judg-

ments that may be filed, and has expressly recognized that more than one such motion may be filed and determined by the trial Court. Allstate Insurance Company v. Smith, 428 S.W.2d 807 (Tex.1968); Anderson v. Bcrmann, 489 S.W.2d 945 (Tex. Civ.App.—San Antonio 1973, writ ref'd n. r.e.); Drake v. Texas Department of Public Safety, 393 S.W.2d 320 (Tex.Civ.App. —Houston 1965, writ ref'd n.r.e.). This is particularly true in a case such as this where it became necessary to file additional affidavits to meet valid objections which had been sustained on appeal. Yarber v. Iglehart, 264 S.W.2d 474 (Tex.Civ.App.— Dallas 1953, no writ). The point of error is overruled.

■ We next consider Appellant's fourth point of error which contends that the trial Court erred in granting summary judgment because there existed a fact issue as to whether there were misrepresentations which induced her to sign the note with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms.

The Appellee herein claims to be a holder in due course and attaches to its motion for summary judgment an affidavit from one of its Vice-Presidents to show that it is the holder of the note, that it took the instrument for value, in good faith, and without notice of any personal defense to the note. Without deciding if the affidavit proof was sufficient summary judgment evidence to establish that Appellee is a holder in due course under Section 3–302 of the Uniform Commercial Code, we will, for purposes of deciding this point, assume Appellee to be a holder in due course.

Section 3–305 of the Uniform Commercial Code, as it existed in June, 1967, provided:

"To the extent that a holder is a holder in due course he takes the instrument free from

\* \* \* \* \* \*

(2) all defenses of any party to the instrument with whom the holder has not dealt except

\* \* \* \* \* \*

(c) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and

\* \* \* ."

The Appellant's third amended answer alleged in Paragraph VII that she was induced to sign the note and other instruments sued upon by the misrepresentations of Western States Improvement Co., so that she signed said instruments without knowledge of their character and essential terms and without reasonable opportunity to obtain such knowledge. She then alleged several specific misrepresentations. Under the rule applicable to summary judgment procedures, the burden is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. Great American Reserve Insurance Company v. San Antonio Plumbing Supply Company, 391 S.W.2d 41 (Tex.1965). Even if it be concluded that the issue involved be one of an affirmative defense where the burden is on the non-moving party, as set forth in Torres v. Western Casualty and Surety Company, 457 S.W.2d 50 (Tex.1970), the Appellant, who was the non-moving party, had filed her controverting affidavit herein. Although, it was not as detailed as the pleading, we find it sufficient to raise a fact issue when considered in the light most favorable to the party opposing the motion. Valley Stockyards Company v. Kinsel, 369 S.W.2d 19 (Tex.1963). She says in that affidavit she was told that the job would cost $2,000.00, but the note upon which she was sued was for $3,283.20.

Paragraph 7 of the comment under Section 3.305, Business and Commercial Code, states that the particular defense with which we are here involved recognizes the defense of "real" fraud, sometimes called fraud in the essence or fraud in the factum, as effective against a holder in due

course. The comment further states in part:

"\* \* \* Under this provision the defense extends to an instrument signed with knowledge that it is a negotiable instrument, but without knowledge of its essential terms.

The test of the defense here stated is that of excusable ignorance of the contents of the writing signed. The party must not only have been in ignorance, but must also have had no reasonable opportunity to obtain knowledge. In determining what is a reasonable opportunity all relevant factors are to be taken into account, including the age and sex of the party, his intelligence, education and business experience; his ability to read or to understand English, the representations made to him and his reason to rely on them or to have confidence in the person making them; the presence or absence of any third person who might read or explain the instrument to him, or any other possibility of obtaining independent information; and the apparent necessity, or lack of it, for acting without delay."

The reasoning behind this particular defense is discussed in clear and concise language in Bender's UCC Service, Hart and Willier, Vol. 2, Commercial Paper § 12.-08(2), p. 12–35 to 12–38, as follows:

" 'Fraud in the factum' is simply one kind of fraud, but it is viewed by the law as so heinous that the victim should be allowed to escape even from a holder in due course. The Uniform Negotiable Instruments Law contained no definition of 'fraud in the factum' and so its elements were created by courts. Code draftsmen attempted to codify the rule in Section 3–305(2)(c):

'Such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms.'

This rule is probably more liberal than anything conceived by the courts, although whether it will be applied as liberally remains with the courts.

First, the misrepresentation itself need be no different than that for 'ordinary' fraud—any false statement as to fact or other deceit. Second, the misrepresentation must induce the party to sign the instrument, which involves the typical kinds of pressure or trickery. Third, the result must be a signing without knowledge or reasonable opportunity to obtain knowledge by the party, and fourth, that lack of knowledge may relate either to the 'character' of the negotiable instrument itself or to 'its essential terms.'

\* \* \* \* \* \*

The rule has particular application to consumers who not infrequently are the victims of referral schemes, home improvement frauds and generally high-pressure tactics by door-to-door sellers. Papers are shuffled and signed quickly, negotiable instruments represented as credit applications, approval of demonstrations offers to buy, and what have you. In most cases of the door-to-door transactions, the court should be hard put to find that the consumer knew of the nature of the instrument or of its essential terms or both. The concept of having to pay a holder in due course for something the consumer doesn't get is understood only by sophisticated or highly trained persons. To that extent, it is not too far fetched to suggest consumers seldom understand the 'character' of the instrument they sign, even though they may know of its essential terms, i.e., that they must pay some money.

'Knowledge' means actual knowledge, not some vague idea, or even 'reason to know,' and it is wrong to impute such knowledge when it is denied and facts support its absence. In short, the rule actually suggests that where there is misrepresentation which induces the signing of a negotiable instrument, the conveniently fictitious rule that a party reads and knows what he signs does not apply when it is denied.

Absence of 'reasonable opportunity to know' should be given an equally liberal construction in the case of consumers. It is unreasonable and unrealistic to expect persons to bring in friends, neighbors, relatives, or even lawyers in the face of high-pressure tactics by a seller or lender. Indeed, price itself prevents such legally 'rational' behavior."

The Courts of other States have consistently applied the rule in holder in due course cases, particularly in consumer cases involving home improvement services contracted for by those of little or no education or business experience. Kearney v. Commerce Investment Company, 262 A.2d 804 (D.C.App.1970); United States Finance Company, Inc. v. Jones, 285 Ala. 105, 229 So.2d 495 (1969); American Plan Corp. v. Woods, 16 Ohio App.2d 1, 240 N. E.2d 886 (1968).

The Appellant's fourth point is sustained. Therefore it is not necessary to decide the other points of error.

The case is reversed and remanded to the trial Court.